STAMMCO, L.L.C., ET AL., APPELLEES, *v.* UNITED TELEPHONE COMPANY OF

OHIO ET AL., APPELLANTS.

[Cite as *Stammco, L.L.C. v. United Tel. Co. of Ohio,*

**136 Ohio St.3d 231, 2013-Ohio-3019.]**

*Class actions—Consideration of issues relevant to both certification of class and merits of claim—Predominance requirement—Overbreadth of class definition.*

(No. 2012-0169—Submitted February 6, 2013—Decided July 16, 2013.)

APPEAL from the Court of Appeals for Fulton County, No. 11-F-003,

2011-Ohio-6503.

_____

SYLLABUS OF THE COURT

At the certification stage in a class-action lawsuit, a trial court must undertake a rigorous analysis, which may include probing the underlying merits of the plaintiff's claim, but only for the purpose of determining whether the plaintiff has satisfied the prerequisites of Civ.R. 23. (*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. ___, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), and *Amgen v. Connecticut Retirement Plans & Trust Funds,* 568 U.S. ___, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013), followed.)

_____

**KENNEDY, J.**

I. Introduction

{¶ 1} In this opinion, we address a single proposition of law of appellants, United Telephone Company of Ohio ("UTO") and Sprint Corporation.[1]

_____

1. Plaintiffs' amended complaint named Sprint Corporation and United Telephone Company of Ohio, doing business as Sprint, as the defendants. Since May 17, 2006, UTO is no longer

{¶ 2} UTO appeals from a judgment of the Sixth District Court of Appeals holding that the trial court abused its discretion in denying certification of plaintiffs' class-action lawsuit. We accepted for review the following proposition of law: "A trial court does not abuse its discretion by evaluating the merits of the plaintiffs' claims when denying class certification."

{¶ 3} We hold that a trial court must conduct a rigorous analysis, which may include probing the merits of plaintiffs' claims, to ensure that the prerequisites of Civ.R. 23 are satisfied. Even though the trial court's consideration of the merits here was improper, its order denying certification of the class was correct because plaintiffs' proposed amended class does not satisfy the prerequisites of Civ.R. 23. Therefore, we reverse the judgment of the court of appeals and reinstate the order of the trial court that rejected plaintiffs' amended class definition, which in effect decertifies plaintiffs' class-action lawsuit.

II. Facts

{¶ 4} In 2005, Stammco, L.L.C., a limited-liability company, and Stammco's owners, Kent and Carrie Stamm, on behalf of other similarly situated telephone customers, filed a complaint seeking to certify a class-action lawsuit against UTO.

{¶ 5} UTO provided plaintiffs with local and long-distance phone service. In their amended complaint, plaintiffs alleged that their phone bills from UTO also contained unauthorized charges from third parties, as part of a practice known as "cramming." Plaintiffs' amended complaint alleged three theories of liability: (1) negligent billing, (2) "breach of the duty of good faith and fair dealing implied in contract," and (3) unjust enrichment. Plaintiffs sought

---

affiliated with Sprint. Sprint remains a party and has filed briefs and motions jointly with UTO. Because only UTO's business practices are at issue, we refer throughout this opinion to UTO only.

injunctive relief and compensatory damages. Plaintiffs proposed the following class definition:

> All individuals, businesses or other entities in the State of Ohio who are or who were within the past four years, subscribers to local telephone service from United Telephone Company of Ohio d.b.a. Sprint and who were billed for charges on their local telephone bills by Sprint on behalf of third parties without their permission. Excluded from this class are defendants, their affiliates (including parents, subsidiaries, predecessors, successors, and any other entity or its affiliate which has a controlling interest), their current, former, and future employees, officers, directors, partners, members, indemnities [sic], agents, attorneys and employees and their assigns and successors.

**{¶ 6}** The trial court certified the class as defined. UTO appealed. The court of appeals affirmed the trial court's judgment certifying the class, but only under Civ.R. 23(B)(3). *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 6th Dist. No. F-07-024, 2008-Ohio-3845, ¶ 66-67.

**{¶ 7}** On appeal, we held that the class definition failed to readily identify prospective class members because (1) it was unclear whether class members were expected to give UTO or the third parties authorization to bill, or whether the third parties were expected to obtain authorization from class members, (2) it was unclear in the phrase "their permission" whom the word "their" referred to, and (3) it was unclear how authorization would occur. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 10 ("*Stammco I*"). We also held that the class was not readily identifiable, because individualized determinations would be needed as to

"whether and how each prospective class member had authorized third-party charges on his or her phone bill" and the identification of class members would require "more than a reasonable effort." *Id*. at ¶ 11.

{¶ 8} Accordingly, we reversed the judgment of the court of appeals and remanded the cause to the trial court to "redefine the class on remand." *Id.* at ¶ 12. However, we noted that we did not reach UTO's arguments that the class was a fail-safe class,[2] that individualized issues predominated in the class, that the class was unmanageable, and that the class was not suitable for the issues in the case. *Id.* at ¶ 13.

{¶ 9} On remand, plaintiffs proffered the following amended class definition:

> All individuals, businesses or other entities in the State of Ohio who are or who were within the period four years prior to the initiation of this lawsuit to the present, subscribers to local telephone service from United Telephone Company of Ohio d.b.a. Sprint and/or any successor company providing that same service, and who were billed for third party charges as to which Sprint had no prior authorization from the customer in writing or by a method acceptable to Sprint sufficient for Sprint to verify that the customer had agreed to such charge. Excluded from the class are those customers who subscribed to and provided authorization for long

---

2. A fail safe class definition is one in which the putative class is defined by reference to the merits of the claim. *See Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 826 (7th Cir.2012); Manual for Complex Litigation (Fourth) § 21.222 (2004). It requires a court to rule on the merits of the claim at the class-certification stage in order to tell who was included in the class. *Id.* "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner,* 669 F.3d at 826.

*Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 288 (D.S.C.2012).

distance services from a provider of toll services that were billed on the customers' local telephone bills.  Also excluded from this class are defendants, their affiliates (including parents, subsidiaries, predecessors, successors, former and future employees, officers, directors, partners, members, indemnities [sic], agents, attorneys and employees and their assigns and successors).

{¶ 10} After the hearing, the trial court issued a decision that stated: (1) "[T]he 'class definition,' as submitted by the Plaintiffs is a prohibited 'fail-safe class,' " (2) "Plaintiff's [sic] action has been brought against the 'local exchange carrier,' rather than the culprit 'third party provider,' " and (3) "The action proposes to impose a 'duty' upon the Defendant Carrier, that is not required of them, according to the status of current legislation and case law."  Consequently, the court held: "[T]he Plaintiffs have not met their burden of establishing, by a preponderance of the evidence, that a 'class certification,' is a proper one," and it denied the plaintiffs' amended motion for class certification.

{¶ 11} Plaintiffs appealed.  The court of appeals held that the amended class definition addressed the ambiguities in the class definition as found by this court.  Specifically, the court of appeals stated:

> The amended class now defines to whom permission is to be granted: appellee, whose permission was required: the customer, and the manner [in which] the permission was to be granted: in writing or an alternative method by which appellee could verify agreement. The amended definition deletes any reference to customers who receive unauthorized charges. In our view, the

amended language satisfies the specific concerns of the court in its mandate for remand.

2011-Ohio-6503, ¶ 39.

{¶ 12} The court held that the amended class definition did not set forth a fail-safe class, because the amended class definition did not rely upon a determination of liability. *Id.* at ¶ 42-46.

{¶ 13} Finally, the court of appeals addressed the trial court's conclusion that UTO had no duty to ensure that third-party charges that it was billing to its customers were authorized and its conclusion that the third parties who were initiating the charges were the real culprits. The court of appeals held that "both rationales are improper incursions into the merits of this case." *Id.* at ¶ 49.

{¶ 14} The court of appeals concluded: "Since two of the three reasons the trial court articulated for denying the class are improper considerations of the merits and the third reason is inapplicable as a matter of law, we must conclude that the trial court abused its discretion in denying class certification." *Id.* at ¶ 50. The court of appeals reversed the judgment of the trial court and remanded for further proceedings consistent with its decision.

{¶ 15} We denied UTO's discretionary appeal. 131 Ohio St.3d 1511, 2012-Ohio-1710, 965 N.E.2d 311. However, we granted UTO's motion to reconsider. 132 Ohio St.3d 1425, 2012-Ohio-2729, 969 N.E.2d 272.

{¶ 16} UTO argues that *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and *Ojalvo v. Ohio State Univ. Bd. of Trustees*, 12 Ohio St.3d 230, 466 N.E.2d 875 (1984), have been misunderstood by courts, including the court of appeals herein, as prohibiting courts from considering the underlying merits of the plaintiffs' claims in a class-action suit for the purpose of deciding whether the requirements of certification of the class have been satisfied. UTO argues that the recent decision in *Wal-Mart Stores, Inc. v.*

*Dukes,* 564 U.S. ___, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), has clarified that courts may probe the merits in determining whether certification is proper under Civ.R. 23. Thus, UTO argues that the court of appeals erred in holding that the trial court abused its discretion when it considered the merits of plaintiffs' claims.

{¶ 17} The plaintiffs agree that courts may consider the underlying merits of a class action for purposes of determining whether the certification requirements are satisfied. However, plaintiffs argue that the court of appeals did not err in reversing the trial court's order, because the trial court improperly rejected plaintiffs' proposed amended class definition.

### III. Analysis

### A. Civ.R. 23 Requirements

{¶ 18} We begin our analysis by reviewing the requirements for certifying a class-action lawsuit. The Ohio Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure, which were adopted in 1938 and have been amended several times. Consequently, federal law interpreting a federal rule, while not controlling, is persuasive authority in interpreting a similar Ohio rule. *Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, 852 N.E.2d 1176, ¶ 18. "Since the Ohio rule is identical to Fed.R.Civ.P. 23, with the exception of Civ.R. 23(F) which is not involved in the discussion here, federal authority is an appropriate aid to interpretation of the Ohio rule." *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).

{¶ 19} Pursuant to Civ.R. 23, plaintiffs must establish seven prerequisites in order to certify a class action: (1) an identifiable and unambiguous class must exist, (2) the named representatives of the class must be class members, (3) the class must be so numerous that joinder of all members of the class is impractical, (4) there must be questions of law or fact that are common to the class, (5) the claims or defenses of the representative parties must be typical of the claims and defenses of the members of the class, (6) the representative parties must fairly and

adequately protect the interests of the class, and (7) one of the three requirements of Civ.R. 23(B) must be satisfied. *Warner v. Waste Mgt., Inc.,* 36 Ohio St.3d 91, 94-96, 521 N.E.2d 1091 (1988).

{¶ 20} If the court determines that the proposed class satisfies the first six prerequisites of Civ.R. 23(A), it must then determine whether a class action is maintainable under at least one of the three subsections in Civ.R. 23(B). *Warner* at 94.

{¶ 21} Under Civ.R. 23(B)(1)(a), a class action is maintainable "if separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class," and subsection (B)(1)(b) "will permit certification if separate actions would create a risk of adjudications that would as a practical matter be dispositive of the claims of non-parties or substantially impair or impede their ability to protect their interests*." Id.* at 95.

{¶ 22} Under Civ.R. 23(B)(2), a class action is maintainable if "its primary application [is] injunctive relief." *Id*.

{¶ 23} And finally, under Civ.R. 23(B)(3), a class action is maintainable if the plaintiff is seeking damages and the court makes two findings: "that the common questions predominate over questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at 96.

{¶ 24} "The failure to meet any one of these prerequisites will defeat a request for class certification * * *." *Schmidt v. Avco Corp.,* 15 Ohio St.3d 310, 313, 473 N.E.2d 822 (1984).

{¶ 25} "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks v. C.P. Chem. Co.,* 31 Ohio St.3d at 201, 509 N.E.2d 1249. "Abuse of discretion has been defined as more than an

error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable." *Id.*, citing *Ojalvo,* 12 Ohio St.3d at 232, 466 N.E.2d 875. "A finding of abuse of discretion, particularly if the trial court has refused to certify, should be made cautiously." *Marks v. C.P. Chem. Co.* at 201.

### B. Certification of a Class-Action Lawsuit Requires a Rigorous Analysis of Plaintiffs' Claims to Ensure Compliance with Civ.R. 23

{¶ 26} At the certification stage in a class-action lawsuit, courts must determine whether plaintiffs' putative class complies with the requirements of Civ.R. 23. UTO argues that *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732, has caused confusion as to whether courts can consider the underlying merits of the plaintiffs' claim in a class-action suit.

{¶ 27} *Eisen* involved a class-action lawsuit alleging violations of antitrust and securities laws with a putative class of six million members. After certifying the class, the district court considered which party would more likely prevail on the merits, in order to determine who should bear the cost of notifying class members.

{¶ 28} On appeal, the United States Supreme Court held that the district court had erred in considering which party was likely to prevail on the merits for the purpose of deciding which party should bear the cost of notification in a class-action lawsuit. *Id.* at 177. The court reasoned that there was "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* The court further reasoned that an inquiry into the merits would give the plaintiff "a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained." *Id.*

{¶ 29} In *Wal-Mart v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541, 180 L.Ed.2d 374, the court stated that *Eisen* had sometimes been interpreted as prohibiting a court from conducting an inquiry into the merits of the case "in order to determine whether it may be maintained as a class action." *Id.* at 2552, fn. 6. *Dukes* held that *Eisen*'s prohibition against considering the underlying merits in a class action was limited to its facts, i.e., it is improper for a court to consider which party will prevail on the merits for the purpose of deciding which party must bear the cost of notification in a class-action lawsuit. *Id.*

{¶ 30} *Dukes* held that "Rule 23 does not set forth a mere pleading standard." *Id.* at 2551. *Dukes* reaffirmed that a trial court needs to conduct a rigorous analysis to ensure that the prerequisites of Civ.R. 23 are satisfied. *Id.*, citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160-161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The court went on to state: "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." (Emphasis sic.) *Dukes* at 2551. The court elaborated: "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. * * * ' "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." ' " *Id.* at 2551-2552, quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

{¶ 31} In *Dukes,* past and present female employees alleged that *Wal-Mart* discriminated against women by denying them promotions and pay equal to men's. The plaintiffs' theory was that Wal-Mart's "strong and uniform 'corporate culture' *permits* bias against women to infect * * * the discretionary decisionmaking of each one of Wal-Mart's thousands of managers—thereby making every woman at the company the victim of one common discriminatory

practice." (Emphasis added.) *Dukes*, 564 U.S. ___, 131 S.Ct. at 2548, 180 L.Ed.2d 374. In support of their claims, plaintiffs submitted statistical evidence about pay and promotion disparities between men and women, anecdotal reports of discrimination, and testimony from a sociologist, who analyzed Wal-Mart's " 'culture' and personnel practices and concluded that the company was 'vulnerable' to gender discrimination." *Id.* at 2549.

**{¶ 32}** The court held that the commonality requirement in Fed.R.Civ.P. 23(a)(2) was the crux of the case. *Id.* at 2550-2551. The court further held that raising common questions is not enough. Rather, the requirement is to " 'generate common *answers* apt to drive the resolution of the litigation.' " (Emphasis sic.) *Id.* at 2551, quoting Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U.L.Rev. 97, 132 (2009). The court held that the commonality requirement of Fed.R.Civ.P. 23 overlapped with plaintiffs' "contention that Wal-Mart engages in a *pattern or practice* of discrimination." (Emphasis sic.) *Id.* at 2552. The court recognized that in resolving a discrimination claim, the reason for the employment decision is critical. *Id.* The court in *Dukes* reasoned that because plaintiffs' complaint involved thousands of employment decisions by Wal-Mart, plaintiffs would have to prove a common theory why Wal-Mart discriminated against them. The court stated: " '[W]hether 0.5 percent or 95 percent of the employment decisions at Wal-Mart might be determined by stereotyped thinking' is the essential question on which [plaintiffs'] theory of commonality depends." *Dukes* at 2554, quoting a decision of the district court in the same case, *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 192 (N.D.Cal.2004). The court found no "convincing proof of a *companywide* discriminatory pay and promotion policy, [and] concluded that [the plaintiffs] have not established the existence of any *common* question." (Emphasis added.) *Dukes* at 2556-2557.

**{¶ 33}** However, a trial court's consideration of the underlying merits of a plaintiff's claim at the certification stage is not unfettered. "[T]he office of a Rule

23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.' " *Amgen v. Connecticut Retirement Plans & Trust Funds,* 568 U.S. ___, 133 S.Ct. 1184, 1191, 185 L.Ed.2d 308 (2013). *Amgen* confirmed that the rigorous analysis at the certification stage "may 'entail some overlap with the merits of plaintiff's underlying claim' " but stated: "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1194-1195, quoting *Dukes* at 2551.

**{¶ 34}** In *Amgen*, plaintiff alleged that it purchased Amgen stock based on misrepresentations and lost money when the misrepresentations were uncovered and the price of the stock fell. The plaintiff, using the "fraud-on-the-market theory," filed a section 10b-5 securities-fraud action.[3] *Amgen* at 1190. The claim required the plaintiff to prove that Amgen had made a materially misleading statement to the public regarding the sale of its stock. Plaintiff sought to certify its complaint as a class-action lawsuit.

**{¶ 35}** The question before the court was whether the predominance requirements in Civ.R. 23(B)(3) required plaintiff merely to plead that Amgen's misrepresentations materially affected the price of Amgen's stock, or whether plaintiff was required to prove the materiality requirement. *Id.* at 1195.

---

3. Securities and Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5, provides that it is unlawful for a person to make material misrepresentations "[i]n connection with the purchase or sale of any security." *See also Basic, Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). In order to recover damages under Rule 10b-5, the plaintiff must prove (1) a material misrepresentation or omission by the defendant, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation. The "fraud-on-the-market" theory permits certain Rule 10b–5 plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations made to the general public. *Amgen,* 568 U.S. ___, 133 S.Ct. at 1192, 185 L.Ed.2d 308.

**{¶ 36}** The court held that the "pivotal inquiry is whether proof of materiality is needed to ensure that *questions* of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." (Emphasis sic.) *Id.* at 1195.

**{¶ 37}** The court found that the plaintiffs did not need to prove materiality at the certification stage for two reasons. First, the court recognized that materiality is an objective question that can be answered by " 'the significance of an omitted or misrepresented fact to a reasonable investor.' " *Id.* at 1195, quoting *TSC Industries, Inc. v. Northway, Inc*., 426 U.S. 438, 445, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Thus, proof of materiality is common to all the class members. *Id.* at 1196.

**{¶ 38}** Second, the court determined:

[T]here is no risk whatever that a failure of proof on the common question of materiality will result in individual questions predominating. Because materiality is an essential element of a 10b-5 claim, * * * [plaintiff's] failure to present sufficient evidence of materiality to defeat a summary judgment motion or to prevail at trial would not cause individual reliance questions to overwhelm the questions common to the class. Instead, the failure of proof on the element of materiality would end the case for one and for all; no claim would remain in which individual reliance issues could potentially predominate.

*Amgen,* 568 U.S. ___, 133 S.Ct. at 1196, 185 L.Ed.2d 308.

**{¶ 39}** The court concluded:

> [Plaintiff was] not required to prove the materiality of Amgen's alleged misrepresentations and omissions at the class-certification stage. This is not a case in which the asserted problem—*i.e.,* that the plaintiff class cannot prove materiality—"exhibits some fatal dissimilarity" among class members that would make use of the class-action device inefficient or unfair. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 107 (2009). Instead, what Amgen alleges is "a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action." *Ibid.* Such a contention is properly addressed at trial or in a ruling on a summary-judgment motion. The allegation should not be resolved in deciding whether to certify a proposed class.

*Id.* at 1197.

{¶ 40} To the extent that *Eisen* has caused confusion, *Dukes* and *Amgen* have clarified that at the class-certification stage, trial courts may probe the underlying merits of an action, but only for the purpose of determining whether the plaintiff has satisfied the prerequisites of Fed.R.Civ.P. 23. *See also Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013).

{¶ 41} Contrary to UTO's assertion, our decision in *Ojalvo,* 12 Ohio St.3d 230, 466 N.E.2d 875, is consistent with *Dukes* and *Amgen*. In *Ojalvo*, the plaintiff filed a class-action lawsuit in the Court of Claims alleging that he and several thousand other employees of the Ohio State University had not been fully compensated pursuant to their written contracts. The Court of Claims denied certification for several reasons, including that there was "no certainty that a common issue of breach of three to six thousand contracts probably exists." *Ojalvo* at 233. The court of appeals affirmed.

**{¶ 42}** In *Ojalvo,* we held that the Court of Claims had abused its discretion in denying certification of the class. We held: "[I]t appears that the Court of Claims was not reviewing the propriety of class certification but was attempting, contrary to the applicable law, to reach the merits of the claim. Class action certification does *not* go to the merits of the action." (Emphasis sic.) *Ojalvo,* 12 Ohio St.3d at 233, 466 N.E.2d 875, citing *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140, 40 L.Ed.2d 732. The court further commented:

> The [Court of Claims'] resolution of the narrow issue of commonality by the conclusion that the breach probably does not exist is unreasonable since no arguments were made, nor need have been made, with respect to the actual merits of the case beyond the necessity of establishing the validity of certification under Civ.R. 23. See *Eisen v. Carlisle & Jacquelin * * *.*

*Id.* at 233.

**{¶ 43}** It is important to recognize precisely what *Ojalvo* held and what it did not hold. *Ojalvo* held that the Court of Claims improperly decided the case on the underlying merits, i.e., that there was no certainty that a breach probably existed. *Ojalvo* did not hold that a court is prohibited from probing the merits of a plaintiff's claims to determine whether class certification is proper under Civ.R. 23. In *Ojalvo,* we cited *Eisen* only for the proposition that a court cannot decide the case on the merits at the certification stage. *Id.* at 233. *Ojalvo* is consistent with *Dukes* and *Amgen* to the extent that a trial court may probe the underlying merits of the plaintiff's claim in order to determine whether the prerequisites for class certification are satisfied under Civ.R. 23.

**{¶ 44}** Accordingly, we hold that at the certification stage in a class-action lawsuit, a trial court must undertake a rigorous analysis, which may include

probing the underlying merits of the plaintiff's claim, but only for the purpose of determining whether the plaintiff has satisfied the prerequisites of Civ.R. 23.

C. *Stammco I* and the Proceedings on Remand

{¶ 45} In *Stammco I*, we held that the class as originally certified by the trial court was not readily identifiable for several reasons, including that the trial court would have to undertake individualized determinations to ascertain whether and how each prospective class member had authorized third-party charges on his or her bill and that doing so would require "more than a reasonable effort." 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, at ¶ 11. We reversed the judgment of the court of appeals and remanded the cause to the trial court.

{¶ 46} On remand, plaintiffs submitted an amended class definition. At a hearing, the parties presented arguments for and against certification. An important issue addressed by both parties was the need for individualized determinations to ascertain which third-party-provider charges were authorized and which were not authorized.

{¶ 47} With regard to the issue of individualized determinations of claims, plaintiffs' counsel argued: "It's simple. Despite—despite protestations of [UTO], we can do what they suggest on page eight of their Brief. 'Create a new specialized computer program.' We can do that. You've got the tapes, we got the technology."

{¶ 48} In opposition, UTO asserted that there was no computer that could identify which charges were authorized and which were not authorized. UTO argued that the amended class did not address the problems identified by this court in *Stammco I*. UTO asserted that resolving which charges were authorized was an issue that would require individualized determinations and individual testimony. UTO claimed that case law holds that cramming cases are not suitable for class-action lawsuits for just this reason. UTO argued that the need for individualized determinations means that this case is not suitable for a class-

action lawsuit, because the class cannot be identified without more than a reasonable effort and because common issues do not predominate.

{¶ 49} The trial court rejected plaintiffs' amended class definition, finding that (1) the proposed class was a fail-safe class, (2) the real culprits were the third-party service providers, and (3) UTO had no duty to ensure that charges by the third-party service providers were authorized.

{¶ 50} The court of appeals reversed the trial court's order, holding that the trial court had abused its discretion because (1) the proposed amended class clarified the ambiguities identified by this court in *Stammco I*, (2) the amended class was not a fail-safe class, and (3) the determination that UTO was not liable was an impermissible decision based on the merits.

{¶ 51} The trial court did err in basing its rejection of plaintiffs' amended class definition on the determination that they would ultimately lose on the merits. Nevertheless, based on the proposed amended class definition, the evidence in this case, the certification requirements of Civ.R. 23, and the applicable case law on cramming, we hold that the trial court's order rejecting the amended class definition was correct. We have consistently held that a reviewing court should not reverse a correct judgment merely because it is based on erroneous reasons. *E.g., Joyce v. Gen. Motors Corp.,* 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990).

{¶ 52} In *Stammco I,* we made clear that the need for individualized determinations to sort out which third-party-provider charges were authorized was an issue to be considered on remand. *Stammco I*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 13. On this second appeal, we now recognize that the need for individualized determinations is dispositive in concluding that the class does not comport with Civ.R. 23. Remanding this case for further consideration of the class action merely to reach an inevitable result would result in additional, unnecessary delay in a case that is more than eight years old. Instead, we exercise our discretionary authority to decide the class-certification question. *See Apel v.*

*Katz,* 83 Ohio St.3d 11, 697 N.E.2d 600 (1998) (rather than remand issues to be resolved by the lower courts, we chose to decide the issues in this court based on the briefs filed therein).

### D. Plaintiffs' Proposed Amended Class Does Not Satisfy Civ.R. 23

#### 1. The Proposed Amended Class Is Overly Broad

{¶ 53} "If * * * a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 824 (7th Cir.2012).

{¶ 54} The original proposed class included those "who were billed for charges on their local telephone bills by Sprint on behalf of third parties without their permission." As we held in *Stammco I*, the class as originally certified was not readily identifiable without expending more than a reasonable effort, because the trial court would have to determine individually whether and how each prospective class member had authorized third-party charges on his or her phone bill.

{¶ 55} In response, the plaintiffs proposed the following amended class definition: "All individuals, businesses or other entities * * * who were billed for third party charges as to which [UTO] had no prior authorization from the customer in writing or by a method acceptable to [UTO] sufficient for [UTO] to verify that the customer had agreed to such charge."

{¶ 56} The proposed amended class seemingly cures the problem that the class was not readily identifiable. However, upon further review, the proposed amended class is too broad. UTO has no records regarding which charges are authorized and which are not. Under the proposed amended class, every person who was billed a third-party charge for which UTO had no prior authorization is

now a class member even if the third-party charge was proper. Therefore, the proposed amended class is overbroad and is not a proper class.

2. Issues Common to Class Members Do Not Predominate

> [I]n determining whether common questions of law or fact predominate over individual issues, it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a *single* adjudication.

(Emphasis added.) *Schmidt v. Avco Corp.,* 15 Ohio St.3d at 313, 473 N.E.2d 822.

{¶ 57} In other class-action lawsuits that have alleged cramming, courts have held that the evidence necessary to determine whether third-party-service-provider charges are authorized requires individualized determinations, which cause the class to fail the predominance requirement of Civ.R. 23(B)(3). *Brown v. SBC Communications, Inc.,* S.D.Ill. No. 05-cv-777-JPG, 2009 WL 260770, *3 (Feb. 4, 2009) ("the Court will need to make individual determinations as to whether each proposed class member authorized the charges for which he was billed by defendants. The result will be multiple mini-trials, each requiring individual proofs"); *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.,* 654 F.3d 728, 738 (7th Cir.2011) (customers' individual transactions would need to be examined to consider whether the claims for unjust enrichment or the statutory claim for deception were proven, which does not comply with Fed.R.Civ.P. 23(b)(3)); *Midland Pizza, L.L.C. v. Southwestern Bell Tel. Co.,* 277 F.R.D. 637, 641-642 (D.Kan.2011) ("the injury at issue here is individualized: whether each class member was billed for, and paid for, unauthorized charges on his or her telephone bill. And if the charges were authorized, individual questions of fact exist as to whether that authorization was valid. Common questions of law or fact

do not predominate over questions affecting only individual members. Defendant is correct that no common proof is possible to demonstrate injury for all class members, because to determine whether or not a charge was authorized will require individualized proof"); *Stern v. Cingular Wireless Corp.*, C.D.Cal. No. CV 05-8842 CAS, 2009 WL 481657, *8 (Feb. 23, 2009) ("one cannot determine what services were crammed without taking the deposition of each class member to determine what services he or she authorized").

{¶ 58} While these cases are distinguishable in some respects from the instant case, they are persuasive to the extent that determining whether third-party-provider claims are authorized requires individualized determinations as to each member of the class that make certification of a class inappropriate under Civ.R. 23(B)(3) because common issues do not predominate. Unlike failure to prove materiality at the certification stage in *Amgen*, failure to offer evidence in a cramming case that is sufficient to prove that third-party charges are unauthorized on a classwide basis will cause individual questions to overwhelm the questions common to class members.

{¶ 59} UTO contracts with third-party service providers to deliver charges from the third-party service providers to the end users via UTO's phone bill. UTO admits that its customers dispute some of the third-party-service-provider charges but also asserts that many of these charges arise from services that are knowingly ordered by UTO's customers, and that these charges are never disputed. UTO asserts that if a customer disputes third-party-service-provider charges, it will credit the customer's bill for the purpose of maintaining good will.

{¶ 60} However, UTO does not routinely receive, have, or maintain any records of the end users' requests for or authorization or receipt of any specific third-party services. The third-party providers have that information, and UTO merely delivers the third-party service provider's bill to the end user. UTO asserts that if it had to investigate questions of complaints about the third-party

charges, it would have to contact the clearinghouse or third-party service provider to obtain the relevant information to resolve the dispute. UTO does not possess the information necessary to determine whether third-party charges are authorized by end users.

{¶ 61} Nevertheless, at oral argument, plaintiffs maintained that the trial court can devise a formula that will indicate which third parties are responsible for unauthorized charges. Plaintiffs submit that a database maintained by UTO can be used to determine which third-party charges are authorized and which are not. The database reflects adjustments that UTO made for its customers each month. Plaintiffs claim that the number of adjustments made each month can identify unauthorized charges from third-party providers. Plaintiffs argue that a threshold could be established that would indicate when a third party was charging an unauthorized charge. Plaintiffs suggest a 4 percent complaint level, but they suggest that the court would set the proper threshold complaint level.

{¶ 62} A summary of the database in the record has seven columns, and each column appears to contain numerical data for a 42-month period. Three of the columns have the following headings: "Carrier Issued Adjustments," "Defendant Issued Adjustments," and "Total Adjustments." The database does not identify why the adjustments were made. UTO asserts that adjustments are made for any number of reasons, including to correct mistakes or clerical errors.

{¶ 63} In sum, we hold that the database provides no probative evidence that would assist in identifying unauthorized charges from third-party providers that appear on the phone bills from UTO each month.

{¶ 64} The class representative's case illustrates why individualized determinations would predominate if this case were certified as a class action. Plaintiff Kent Stamm, owner of the Pop Shop, disputed a third-party charge for a service from Bizopia that was billed to him on his UTO phone bill. He called Bizopia to dispute the charge. Bizopia refused to reverse the charge, claiming

that it was authorized by Frank Smith, who was an employee of the Pop Shop. Bizopia claimed to have a voice recording of Smith's authorization for the service, and it faxed a purported confirmation of the charge to Stamm. Stamm sent several e-mails to Bizopia complaining about the charges. Stamm requested that Bizopia provide him a copy of the voice authorization from the third-party charge from Stamm's employee Frank Smith. Bizopia refused to provide a recording, but offered to play the audio verification over the phone. Bizopia canceled Stamm's account with Bizopia, but indicated that the charges would remain. Stamm's situation is illustrative of the need for individualized determinations to ascertain whether third-party charges to UTO customers were authorized that make this case inappropriate for resolution though a class-action complaint.

{¶ 65} Unauthorized third-party charges are better resolved on an individual basis with the third party or UTO. UTO's phone bills identify third-party charges, the entity responsible for the charge, and a toll-free number for billing inquiries. Moreover, UTO claims that it has a policy of removing third-party charges for the purpose of maintaining good will with its clients. Finally, for larger charges or where the charge cannot be resolved over the phone, small-claims court is also an option.

{¶ 66} Accordingly, because ascertaining whether third-party charges are authorized will require individualized determinations, common issues do not predominate.

## IV. Conclusion

{¶ 67} Plaintiffs' amended class definition is overbroad and fails to satisfy the predominance requirement of Civ.R. 23(B)(3). Accordingly, we reverse the judgment of the court of appeals and reinstate the order of the trial court that overruled plaintiffs' motion to amend the class, which in effect decertifies the

plaintiffs' class action. We remand the cause to the trial court for proceedings not precluded by the denial of class certification.

Judgment reversed,

class decertified,

and cause remanded.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 68} I dissent and would affirm the decision of the court of appeals. I also dissented in *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292; the majority in that case remanded the case to the trial court to redefine the class. That was, it turns out, a fool's errand. The majority decides today that the class is not capable of definition.

{¶ 69} That "inevitable result," majority opinion at ¶ 52, allows the majority to ignore the fact that this court, after having originally denied jurisdiction in this matter, reconsidered that decision and allowed jurisdiction on just one of the appellants' propositions of law. 132 Ohio St.3d 1425, 2012-Ohio-2729, 969 N.E.2d 272. That proposition of law reads:

> *Wal-Mart v. Dukes* rejects *Ojalvo*'s interpretation of *Eisen:*
> A trial court does not abuse its discretion by evaluating the merits
> of the plaintiffs' claims when denying class certification.

The majority ultimately agreed with the appellate court that the trial court had "err[ed] in basing its rejection of plaintiffs' amended class definition on the determination that they would ultimately lose on the merits." Majority opinion at ¶ 51. That should have ended this appeal.

**{¶ 70}** But the majority cites *Apel v. Katz*, 83 Ohio St.3d 11, 16, 697 N.E.2d 600 (1998), in holding that this court has "discretionary authority to decide the class-certification question." Majority opinion at ¶ 52. The majority characterizes *Apel* as involving a situation where, "rather than remand issues to be resolved by the lower courts, we chose to decide the issues in this court based on the briefs filed therein." *Id. Apel* concerned a dispute between neighbors over a roadway easement, and the dispute had dragged through the courts for nine years. *Both* parties in *Apel* argued that the court of appeals had erred by failing to address issues that had not been made moot by the issue the court did decide. So this court decided those issues.

**{¶ 71}** This case is not about an error by the court of appeals in determining whether issues were moot. And here, this court itself limited the issues it was willing to consider. But ultimately, as in the two times it has reconsidered its decision to deny jurisdiction to the appellants in this case, this court changed its mind.

**{¶ 72}** This court's decision today fits with the recent jurisprudence of the United States Supreme Court, "a Court bent on diminishing the usefulness of Rule 23." *Am. Express. Co. v. Italian Colors Restaurant*, ___ U.S. ___, 133 S.Ct. 2304, 2320, 186 L.Ed.2d 417 (2013) (Kagan, J., dissenting). As a practical matter, Ohio citizens who suffer small, individual damages as a result of a business's serial bad conduct are without a meaningful remedy unless they can convince the Ohio attorney general to get interested in their cases. This court is well on its way to consigning class actions in Ohio to the dustbin of legal history, joining workplace intentional torts. What is the next step in diminishing the role of courts?

O'NEILL, J., concurs in the foregoing opinion.

———————————

Murray & Murray Co., L.P.A., Dennis E. Murray Sr., and Donna J. Evans, for appellees.

Baker & Hostetler, L.L.P., Michael K. Farrell, John B. Lewis, and Karl Fanter, for appellants.

Linda S. Woggon, urging reversal for amicus curiae, Ohio Chamber of Commerce.

———————————————