[Cite as *Covell v. Kloos*, 2018-Ohio-3358.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| TIMOTHY R. COVELL, | : | |
| Plaintiff-Appellant, | : | Case No. 17CA19 |
| v. | : | |
| | | DECISION AND |
| SALLY ANN COVELL, | : | JUDGMENT ENTRY |
| Defendant-Appellee, | : | |
| and | : | |
| NANCY KLOOS, | : | |
| Third-Party Intervenor-Appellee. | : | |

APPEARANCES[1]:

Stephen S. Gussler, Margulis, Gussler & Hall, Circleville, Ohio, for plaintiff-appellant.

Hoover, P.J.

{¶1}   Plaintiff-appellant, Timothy R. Covell ("Father"), appeals a judgment from the Pickaway County Court of Common Pleas, which approved and adopted a magistrate's order that designated third-party intervenor, Nancy Kloos, maternal aunt ("Aunt"), as the temporary custodian of his two minor children. Father had been the residential parent of the two minor children since 2007. The magistrate had found that both Father and the children's mother, Sally Crawford, f.k.a. Sally Covell ("Mother"), were unsuitable parents. In addition, the magistrate's order certified the record to the Pickaway County Juvenile Court. By approving and adopting the

---

[1] Neither defendant-appellee nor intervenor-appellee have filed a brief in this case or otherwise participated in the appeal.

magistrate's order, the trial court, in effect, denied Father's Motion to Set Aside Magistrate's Order.

{¶2}    Here on appeal, Father argues that the trial court violated his due process rights by basing the unsuitability determination solely on the contents of a confidential in camera interview of the two minor children. Father argues that the trial court stripped him of his constitutional right to parent his children. He contends that he did not have the right to cross examine the children or offer contradicting testimony and documents. He claims the magistrate found him to be unsuitable based on "no admissible evidence."

{¶4}    Upon review, we find that the trial court did not err in approving and adopting the magistrate's order, thereby denying Father's motion to set aside the magistrate's order. However, we reach this conclusion for reasons that differ from those stated in the trial court's judgment entry.

{¶5}    Accordingly, we overrule the assignment of error and affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶6}    Father and Mother were divorced in February 2007 through the Pickaway County Court of Common Pleas. The divorce decree designated Father as the residential parent and legal custodian of the couple's three children, Anna Covell, DOB: 08/09/97; Nicole Covell, DOB: 02/29/00; and B.C., DOB: 12/08/01. Anna Covell, born August 9, 1997, reached the age of majority on August 9, 2015.

{¶7}   On August 4, 2017, Mother filed a motion for emergency custody of the two remaining minor children, Nicole Covell[2] and B.C. Soon thereafter, on August 18, 2017, Aunt filed a motion to intervene for the purpose of obtaining custody of the children.

{¶8}   At the hearing on the motion for emergency custody, Father presented a witness, Cynthia Holzschuh ; and the magistrate conducted an in camera interview of both Nicole Covell and B.C. In addition, Father's attorney "presented a police report detailing police involvement in [Mother's] home resulting in the filing of misdemeanor criminal charges, the discovery or drugs and paraphernalia and the potential involvement of Mercer County Children's Services." Later that same day, the magistrate issued an order, which among other things: (1) found both Father and Mother to be presently unsuitable caretakers for the minor children; (2) designated Aunt as the temporary custodian of the children, and (3) certified the case to the Pickaway County Juvenile Court for further proceedings.

{¶9}   Father filed a motion to set aside the magistrate's order.

{¶10}  In October 2017, the trial court found that the magistrate's decision to remove the children from both parents was supported by the record. It further found that the magistrate had properly certified the case to the juvenile court pursuant to R.C. 3109.06. The trial court, thus, approved and adopted the magistrate's order; effectively denying Father's motion to set aside the magistrate order.

{¶11}  Father timely appealed.[3]

## II. Assignment of Error

---

[2] While this appeal was pending, Nicole Covell reached the age of majority. Thus, any issues regarding custody of Nicole Covell are moot. *N.V. v. W.S.*, 6th Dist. Sandusky No. S-08-032, 2009-Ohio-3809, ¶ 18.

[3] Because it appeared that this Court might not have jurisdiction to consider the matter, we ordered Father to file a memorandum addressing the jurisdictional issue. After reviewing Father's memorandum, we ultimately found that the trial court's order met the requirements of R.C. 2505.02, by affecting a substantial right in a special proceeding, and therefore constituted a final appealable order.

{¶12}  Father sets forth one assignment of error for our review:

The trial court erred in denying plaintiff's motion to set aside the Magistrate's Order of August 18, 2017, in that the determination of unsuitability of natural parents for custody based solely on the contents of a confidential in-camera interview of minor children is a violation of the parents' paramount right to custody, and to due process in any attempt to divest such right.

### III. Law and Analysis

### A. Standard of Review

{¶13}  Custody determinations are some of the most difficult and agonizing decisions a trial court must make, therefore, a trial court must have wide latitude in its consideration of the evidence. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Consequently, we can sustain a challenge to a trial court's custody decision only upon a finding that the trial court abused its discretion. *Id.* An abuse of discretion is an unreasonable, arbitrary, or unconscionable use of discretion, i.e., a view or action that no conscientious judge could honestly have taken. *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67; *State v. Gavin,* 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 20. When applying an abuse-of-discretion standard, we are not free to merely substitute our judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).

{¶14}  Where an award of custody is supported by a substantial amount of credible and competent evidence, a reviewing court will not reverse such an award for being against the weight of the evidence. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). " 'The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness * * * .' " *Wilson v. Wilson*, 4th Dist. Lawrence No. 09CA1, 2009-Ohio-4978, ¶ 21, quoting *Davis* at 418. "This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude

that does not translate to the record well." *Id.* at ¶ 21, quoting *Davis* at 419. This is a standard

long acknowledged by the Ohio Supreme Court:

> In proceedings involving the custody and welfare of children the power of the
>
> trial court to exercise discretion is peculiarly important. The knowledge obtained
>
> through contact with and observation of the parties and through independent
>
> investigation can not be conveyed to a reviewing court by printed record.

*Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

### B. Trial Court Did Not Err in Denying Father's Motion to Set Aside Magistrate's Order

{¶15} In his sole assignment of error, Father argues that the trial court erred in denying

his motion to set aside the Magistrate's Order of August 18, 2017. He contends that the

determination that he was unsuitable was based solely on the contents of a confidential in-camera

interview of his minor children, which is a violation of his paramount right to custody and due

process.

{¶16} The relationship between a parent and his or her child is among the "associational

rights" sheltered by the Fourteenth Amendment to the United States Constitution. *M.L.B. v.*

*S.L.J.*, 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). The Ohio Supreme Court has

held that the due process rights provided by the Fourteenth Amendment are coextensive with

Article I, Section 16 of the Ohio Constitution. *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio

St. 540, 544-545, 38 N.E.2d 70 (1941). Accordingly, a parent has a " 'fundamental liberty

interest' " in the care, custody, and management of his or her child. *In re Murray*, 52 Ohio St.3d

155, 157, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct.

1388, 71 L.Ed.2d 599 (1982). "Since parents have constitutional custodial rights, any action by

the state that affects this parental right, such as granting custody of a child to a nonparent, must

be conducted pursuant to procedures that are fundamentally fair." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16, citing *Santosky* at 754.

{¶17}   This right, however, is not absolute. *See In re Shifflet*, 4th Dist. Athens No. 06CA13, 2006-Ohio-3576, ¶ 20; *In re Johnson*, 4th Dist. Ross No. 94CA2003, 1995 WL 146064, *2 (Mar. 29, 1995). A parent may forfeit his or her paramount right to custody if he or she is unsuitable. *In re Perales*, 52 Ohio St.2d 89, 98-99, 369 N.E.2d 1047 (1977). Before divesting a parent of his or her paramount right to custody, the court must establish unsuitability "by a preponderance of the evidence demonstrating 'abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable—that is, that an award of custody would be detrimental to the child.' " *Adkins v. Adkins*, 4th Dist. Pike No. 370, 1985 WL 6537, at *2 (Feb. 13, 1985), quoting *Perales* at 98. *See also In re Young*, 58 Ohio St.2d 90, 91, 388 N.E.2d 1235 (1979); *Van Hoose v. Van Hoose*, 4th Dist. Pike No. 433, 1990 WL 54873, *3 (Apr. 19, 1990). The last criteria, "otherwise unsuitable," allows the court to balance the interests of parent and child. *Perales* at 98.

{¶18}   Because due process is a flexible concept that only requires the procedural protection the situation warrants, the due process rights of a parent must be balanced against the best interests of the child. *See Mathews v. Eldridge*, 424 US. 319, 334, 96 S.Ct. 893, 47 L.E.2d 18 (1976). "[T]he primary, if not the only, consideration in the disposition of all children's cases is the best interests and welfare of the child." *In re Pryor*, 86 Ohio App.3d 327, 332, 620 N.E.2d 973 (4th Dist.1993); *see also Clark v. Bayer*, 32 Ohio St. 299 (1877), paragraph one of the syllabus ("[I]n all cases of controverted right to custody the welfare of the minor child is first to be considered.").

{¶19}   Here, Father acknowledges that the in camera interview process has generally been upheld as a reasonable balance between the interests of having the child freely express himself in a relaxed atmosphere and the due process rights of the parents. Father attempts to make the distinction that in this case, the information gleaned from the in camera interviews was used to take custody from a parent and grant temporary custody to a non-parent. Father seems to ignore the fact that he presented information to the magistrate regarding "a police report detailing police involvement in [Mother's] home resulting in the filing of misdemeanor criminal charges, the discovery or drugs and paraphernalia and the potential involvement of Mercer County Children's Services," information used as a basis for finding the Mother unsuitable.

{¶20}   In addition, although Father argues that he was not able to face his daughters, cross examine them, or offer contradicting testimony and documents, the record is devoid of any request of the Father to do so. Even after the Father filed his Motion to Set Aside the Magistrate's Order of August 18, 2017, he still never requested a copy of the transcript of the in camera interviews. In fact, more than a month later, the trial court had to sua sponte order the transcript of the in camera interviews to be prepared. After another month elapsed, Father still had not provided the court with a transcript of the in camera interviews. The trial court had to enter another order requiring Father to provide the court with a transcript by a date certain, October 27, 2017. The record shows that the transcripts were actually filed on October 31, 2017, four days beyond the deadline set by the trial court. Even after the transcripts were filed, Father still never made a request to review the transcripts, or to be provided a copy of the transcripts. Instead, Father filed his Notice of Appeal in this Court on November 29, 2017.

{¶21} Even though the trial court interpreted "sections (2)(c) and (3) of R.C. 3109.04 to mean that the in camera interviews are to remain confidential," we find this erroneous[4] interpretation to be immaterial because the Father's failure to request a review of the in camera interviews, or a copy of the transcripts results in waiver of the issue on appeal. *See State v. Marcinko*, 4th Dist. Washington No. 06CA51, 2007-Ohio-1166, ¶¶ 22-23 (appellant's failure to adequately raise an issue in the trial proceedings constitutes waiver of that issue on appeal); *In re A.W.*, 4th Dist. Hocking No. 07CA14, 2008-Ohio-718, ¶ 13 (appellant's failure to seek available remedy estopped her from complaining on appeal that her due process rights were violated); *see also State v. Marcum,* 4th Dist. Hocking No. 14CA13, 2014-Ohio-5373, ¶ 27, quoting *Stammco, L.L.C. v. United Tel. Co. of Ohio,* 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 51 (" '[A] reviewing court should not reverse a correct judgment merely because it is based on erroneous reasons.' ").

{¶22} Nonetheless, we must still review the record to determine whether the trial court abused its discretion in denying Father's Motion to Set Aside Magistrate's Order and in approving and adopting the Magistrate's order.

{¶23} The magistrate interviewed Nicole Covell first. Nicole explained that her father "always knows where we are." Further, Nicole said that her father "always knows what we're doing." He has an app that shows their location. Also, Nicole told the magistrate about her anxiety issues. She said, "I've never lived in so much anxiety that I don't know what's going to happen from one second to the next." Nicole also explained that her father and his girlfriend,

---

[4] This Court has reasoned that "if the legislature had intended to deny the parents access to a transcript of their child's in camera interview, the legislature could have clearly stated that in R.C. 3109.04(B)." *Inscoe v. Inscoe*, 121 Ohio App.3d 396, 420, 700 N.E.2d 70 (4th Dist.1997). This Court further stated, "Although we agree that children may be more candid and forthright during a confidential interview, we must not construe R.C. 3109.04 to achieve a result beyond the clear language of the statute." *Id.*

Jeanna, argue often. She said, "[s]ince Jeanna's been around it's been—I've seen him more angry than I never [sic] have before."

{¶24} Furthermore, Nicole disclosed her suicidal thoughts to the magistrate. She explained that her father knows that she has been mentally unstable. Nicole had cut herself "really, really deep" one time. She said, "I could see like both sides, the inside of my arm, it was just really gross." She told the magistrate that her father put a butterfly Band-Aid on it and left for the Bahamas. Nicole further discussed that she and B.C. have talked about their suicidal thoughts. B.C. has told her, while bawling her eyes out, that she just wants to die.

{¶25} Nicole added that she does everything she can to avoid her father and that she cannot stand being around him. In response to the question, "What physical abuse have you endured?" Nicole stated:

> I thought that it was normal, you know, like the –it was like, you know, grabbing,
>
> like being angry and like, you know, like just tossing someone to the side.

Nicole further explained that her father has "yelling and little fits, acting like a five year old, it's ridiculous." She continued, "I've never seen an adult ever act the way he does, and sometimes it's like a little boy * * * him throwing fits and going off in anger."

{¶26} Next, the magistrate interviewed B.C., who said:

> The problems are the manipulation. Always being scared all the time. I don't want
>
> to be scared. * * * The main issues are * * *the screaming and yelling and
>
> swinging and getting in your face. * * * I've seen him hit two of my sisters. * * *
>
> I saw my step mom[,] * * * I've seen her comforting my sister after she was
>
> abused by my dad on the couch. * * * He's constantly dangling things above your
>
> head, using you, and in your mind you need him. But really you don't need him. *

* * I don't want to be his toy any more. I don't want to be his property anymore,

because that's what he refers to me as, that's what his lawyer referred to me as.

{¶27} B.C. further disclosed to the magistrate that her father goes "ballistic" if you say something that he does not want to hear. She said, "He'll get on top of you, start screaming at you. If you say anything different from what he wants to hear." She added, "He can take a person that he doesn't even know and ruin them. He did it to my mom. I know he did it to my mom." B.C. also told the magistrate that her father "drinks every night two bottles of wine." B.C. explained that her father believes he is a "prophet of God." B.C. said, "I've never had love. I had, if anything it's been hate all the time. And you just get depressed."

{¶28} Like her sister, B.C. disclosed to the magistrate that she has hurt herself. She said she had cut herself with a razor. B.C. told the magistrate, "I just want to die." She further discussed how her father would make her sleep in his room when his ex-wife left. She went into further detail about this experience explaining how uncomfortable it made her. B.C. also told the magistrate about how her father has touched her inappropriately by grabbing her butt. Later in the interview, she discussed how she feels uncomfortable around her father as she remembers occurrences from when she was a younger child.

{¶29} B.C. told the magistrate that she has seen her father hurt her sisters and stepsister. She gave examples of other abusive situations that have caused B.C. to have "really bad anxiety." B.C. explained that her hair has fallen out where she picks at it because of her anxiety and because she is scared all the time. B.C. went on to explain some of her father's paranoid behavior like hiding guns throughout the house.

{¶30} After reviewing the transcripts of the in camera interviews, we cannot find that the trial court abused its discretion in denying Father's Motion to Set Aside Magistrate's Order

and in approving and adopting the magistrate's order. A substantial amount of credible and competent evidence has been presented to the trial court regarding the unhealthy situation that the children have endured. Both children have admitted to suicidal ideation and have gone so far as to engage in self-harm as a direct result of Father's actions. Accordingly, we overrule Father's sole assignment of error.

## IV. Conclusion

{¶31}  Due to the reasons outlined above, we overrule Father's sole assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and McFarland, J.: Concur in Judgment and Opinion.


For the Court,


By: _____
            Marie Hoover
            Presiding Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**