[Cite as *Jacobs v. FirstMerit Corp.*, 2013-Ohio-4308.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO


| | | |
|---|---|---|
| EMILY JACOBS AND JAMES GLAVIC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : | **O P I N I O N** |
| | : | |
| Plaintiffs-Appellees, | : | |
| | : | **CASE NO. 2013-L-012** |
| - vs - | : | |
| FIRSTMERIT CORPORATION, et al., | : | |
| Defendants-Appellants. | : | |


Civil Appeal from the Lake County Court of Common Pleas, Case No. 11CV000090.

Judgment: Affirmed in part; reversed in part and remanded.


*Patrick J. Perotti* and *Nicole T. Fiorelli,* Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077; *Hassan A. Zavareei* and *Andrea R. Gold,* Tycko & Zavareei, LLP, 2000 L Street, N.W., Suite 808, Washington, D.C. 20036; and *Stuart E. Scott* and *Daniel Frech,* Spangenberg Shibley & Liber, LLP, 1001 Lakeside Avenue, East, Suite 1700, Cleveland, OH 44114 (For Plaintiffs-Appellees).

*David F. Adler, Michael A. Platt, Robert E. Haffke,* and *Amanda R. Parker,* Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH 44114; and *Chad A. Readler,* Jones Day, 325 John H. McConnell Boulevard, Columbus, OH 43215 (For Defendants-Appellants).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, FirstMerit Corporation, et al. ("FM"), appeal the judgment of the Lake County Court of Common Pleas granting the motion of appellees, Emily Jacobs and James Glavic, for class certification. For the reasons that follow, we affirm

in part; reverse in part for the trial court to modify the class definition and remand for this limited purpose.

{¶2} Appellees alleged in their First Amended Class Action Complaint that they opened a joint checking account with FM. Appellees were automatically enrolled in FM's overdraft program so that if they did not have sufficient funds in their account to pay for a transaction, FM paid the item, processed an overdraft without advising appellees, and charged them $35 per overdraft.

{¶3} Appellees alleged that FM adopted a bookkeeping device pursuant to which it reordered its customers' debit card transactions using a "high-to-low" posting method. Under this posting method, FM paid its customers' debit card transactions in descending order from the highest to the lowest amount, rather than in the actual order in which they occurred. Under this posting method, the account's balance was depleted as quickly as possible, unlawfully increasing the number of transactions that would result in overdrafts.

{¶4} Appellees alleged that, at the same time FM adopted its new posting method, FM also began to "commingle" its customers' debit card transactions with their checks and other customer-authorized transactions. By commingling all debit transactions and then reordering them from high to low, FM wrongfully charged its customers, including appellees, additional overdraft fees. Further, FM did not disclose to its customers its manipulations or that they would greatly increase overdrafts and overdraft fees. Also, FM misrepresented to appellees on their monthly account statements that their transactions were posted chronologically and that appellees owed overdraft fees, which, in fact, appellees did not owe.

2

{¶5} Appellees alleged that, as a result of FM's illegal reordering and commingling scheme, their accounts and those of all putative class members were placed in overdraft status before they were actually overdrawn and the accounts were assessed more overdraft fees than legally permitted. As a result of FM's reordering and commingling scheme, FM has improperly charged its Ohio customers millions of dollars.

{¶6} Appellees asserted claims for fraud, unjust enrichment, and breach of contract, and prayed for disgorgement by FM of all illegally held monies, damages in an unspecified amount to be determined at trial, and injunctive relief.

{¶7} Subsequently, appellees moved for class certification of their claims, and FM filed its brief in opposition. The parties submitted evidentiary materials, including deposition transcripts, experts' reports, and exhibits in support of their respective positions. The trial court held an oral hearing on the motion for certification.

{¶8} Larry Shoff, FM's representative, testified in deposition that "posting" is the procedure followed by all banks to process debit items presented for payment against accounts. Each night after midnight, all debit items presented for payment during the preceding business day are posted by computer and subtracted from the account balance. The order in which items are posted is determined by computer programming. These items are typically debit-card transactions, checks, and other customer-authorized transactions. If the account balance is sufficient to cover all items presented for payment, there will be no overdrafts, regardless of the posting method used. However, if the account balance is insufficient to cover every debit item, the account will be overdrawn. When an account is overdrawn, the posting sequence can have a dramatic effect on the number of overdrafts incurred by the account, even though the

total sum overdrawn will be the same. The number of overdrafts drives the amount of overdraft fees.

{¶9} Prior to March 2005, the bank sorted transactions by different groups. Checks were posted by number and non-check items were posted "low-to-high." Under the low-to-high posting method, the bank posted items from lowest to highest dollar amount. The smallest purchases were deducted first and the balance was used as slowly as possible, minimizing the number of overdrafts and overdraft fees.

{¶10} Mr. Shoff testified that in March 2005, in order to increase FM's revenue, it adopted a change in its posting method, pursuant to which all customers' transactions were commingled and all transactions were posted and paid in order of highest to lowest dollar amount. Under this posting method, large dollar items were posted and paid first, even if they were received last, and the account balance was depleted as quickly as possible, thus maximizing the number of overdrafts and overdraft fees.

{¶11} Mr. Shoff testified that when a customer opens an account, he receives a copy of the "Terms and Conditions," which are drafted solely by FM and not subject to any change by the customer. Thereafter, he receives a monthly account statement.

{¶12} After FM changed its posting order in March 2005, it advised its existing customers in their April 2005 account statement, as follows:

{¶13} FirstMerit Bank may pay items drawn on your account in any order. Our current practice is to pay items received on any one day in the order of the highest dollar amount to the lowest dollar amount. * * * The order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented.

4

FirstMerit's current practice will cause your largest * * * items to be paid first * * *, but may increase the overdraft * * * fees you have to pay if collected funds are not available to pay all of the items. FirstMerit may change the order in which it generally pays items at any time and from time to time without giving you prior notice of the change.

{¶14} This same notice was given to new customers in the "Terms and Conditions" they received when they opened their accounts after March 2005.

{¶15} Elizabeth Barber, an FM senior vice president, testified that a customer could not determine from his monthly checking account statements the order in which multiple transactions were posted on any given day. She said that the amount of the overdraft fee is $35, regardless of the amount of the overdraft, and that FM limits the amount of overdrafts it will charge a customer to seven per day. Thus, one minimal overdraft could result in as many as seven separate overdraft fees of $35 each.

{¶16} Following the oral hearing on appellees' motion for certification, the trial court entered its judgment granting the motion.

{¶17} FM appeals the trial court's ruling, asserting three assignments of error. Because the first two are related, they are considered together. They allege:

{¶18} "[1.] The trial court abused its discretion by granting Plaintiffs' class-certification motion without conducting the required rigorous analysis of the Civ.R. 23 prerequisites.

{¶19} "[2.] The trial court abused its discretion in concluding that Plaintiffs satisfied each of the Civ.R. 23 prerequisites and that the class should be certified."

5

**{¶20}** The Supreme Court of Ohio has held that "[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus. Thus, appellate courts generally give trial courts broad discretion in deciding whether to certify a class. *Hamilton v. Ohio Savings Bank*, 82 Ohio St.3d 67, 70 (1998). The Ohio Supreme Court stated that "the appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded * * * in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Id.*, citing *Marks, supra*, at 201.

**{¶21}** However, "the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." *Hamilton, supra*.

**{¶22}** In reviewing a motion for class certification, the court must take the substantive allegations of the complaint as true and not reach the merits of those allegations and claims. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 233 (1984).

**{¶23}** Throughout its brief, FM argues that the trial court did not engage in the "rigorous analysis" required by *Hamilton*, as evidenced by the fact that, according to FM, the court did not make sufficient findings. In *Hamilton*, the Supreme Court stated that, while there is no explicit requirement in Civ.R. 23 that the trial court make formal

6

findings to support its decision on a motion for class certification, there are compelling reasons for doing so. *Id.* at 70. The Court stated that a trial court's failure to make such findings impedes appellate inquiry into whether the relevant factors were properly applied and given appropriate weight. *Id.* at 71. The Court then "suggested" that a trial court make separate written findings as to each of the class requirements, and specify its reasons for each finding. *Id.* Thus, while a fully articulated decision is preferable, it is not essential to a class certification. Appellate courts have held that "nothing in *Hamilton* requires us to find an abuse of discretion solely because the trial court did not comply with this recommendation." *Pyles v. Johnson*, 143 Ohio App.3d 720, 731 (4th Dist.2001). In fact, in *Hamilton, supra*, although the trial court did not rule on each class-action requirement or provide any rationale for its class-certification decision, the Supreme Court addressed the merits of the trial court's class certification based on the Court's review of the record.

{¶24} The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met. Civ.R. 23(A) and (B); *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91 (1988).

7

{¶25} In the instant case, the trial court prepared detailed findings of fact, concluding that each of the seven class-action requirements was satisfied. While the court's discussion of some of the requirements was more extensive than others, the court provided reasons for each of its findings.

{¶26} First, FM challenges the trial court's definition of the class. The trial court defined the class, as follows: "(1) all people who live in Ohio and had or have an account with the defendants; (2) who had more than one account transaction in a single day; (3) whose transactions were re-ordered by the defendants to occur from largest to smallest debits; and, (4) whose accounts were charged overdraft fees on one or more of the days on which the defendants re-ordered their accounts."

{¶27} "'The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Hamilton, supra*, at 71-72, quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2 Ed.1986) 120-121, Section 1760. Thus, the class definition must be precise enough "'to permit identification within a reasonable effort.'" *Hamilton, supra*, quoting *Warner, supra*, at 96. "An identifiable class must exist before certification is permissible. The definition of the class must be unambiguous." *Warner*, paragraph two of the syllabus. Where a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite. *Miller v. Painters Supply & Equip. Co.*, 8th Dist. Cuyahoga No. 95614, 2011-Ohio-3976, ¶24.

**{¶28}** FM argues the trial court abused its discretion in defining the class as it did because the trial court adopted the definition proposed by appellees in their original complaint, although appellees revised the definition in their amended complaint. The revised definition, with the change emphasized, provided as follows: "All customers in the State of Ohio and who had one or more accounts with Defendants and who incurred an overdraft fee *as a result of* Defendants' practice of reordering *debit card transactions* from highest dollar amount to lowest dollar amount."

**{¶29}** FM argues it only addressed appellees' revised class definition at the hearing and that, because the trial court adopted appellees' original definition of the class, FM was prevented from presenting its reasons in opposition to appellees' original definition. Further, in their Answer and Affirmative Defenses, FM presented detailed allegations in opposition to appellees' original definition of the class. Moreover, "*Warner* not only permits but encourages the trial court to modify what is otherwise an unidentifiable class." *Ritt v. Billy Blanks Enters.*, 8th Dist Cuyahoga No. 80983, 2003-Ohio-3645, ¶20, *discretionary appeal not allowed by the Ohio Supreme Court at* 100 Ohio St.3d 1486, 2003-Ohio-5992. In any event, FM does not indicate what, if any, additional arguments it would have made in opposition to appellees' original definition of the class.

**{¶30}** However, the class certified by the trial court is overbroad and thus does not meet the first requirement of Civ.R. 23, i.e., that its definition be unambiguous. As a result, the class requires modification in four particulars.

**{¶31}** First, the class is not limited in terms of a specific time period in which the class members were harmed by FM's alleged misconduct. As defined, the class is

9

open-ended in terms of time frame.  We note that in *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir.2012), a case strikingly similar to the one before us, the Ninth Circuit affirmed class certification where the class period was specified.  *Id.* at 718.

**{¶32}**  Second, in their proposed amended class definition, appellees proposed to limit the relevant transactions of class members to debit card transactions.  However, the trial court in its definition did not so limit the class and its members include customers having any type of transactions.  Thus, the class as defined is not consistent with appellees' theory of recovery and is overbroad.  In *Gutierrez, supra,* the class definition was limited to debit card transactions.  *Id.* at 718.  The same was also true in *Larsen v. Union Bank, N.A.*, 275 F.R.D. 666 (S.D.Fla.2011), another similar case.

**{¶33}**  Third, the class definition adopted by the trial court does not limit the class to customers who were charged *multiple* overdraft fees *on the same day*. Rather, it includes *customers* who were charged *multiple overdraft fees* on *several days* due to an overdraft, which could be interpreted to mean that on several days, a customer was charged one fee.  Appellees conceded at the oral hearing that one overdraft fee per day would be proper.  For this additional reason, the present class definition is overbroad as it includes within the class customers who have no claim under appellees' theory of recovery.

**{¶34}** Fourth, while appellees proposed to include a reference to a causal connection ("as a result of") between FM's alleged misconduct and the imposition of overdraft fees in their proposed amended definition of the class, there is no such reference in the definition adopted by the trial court.

10

{¶35} In *Gutierrez, supra,* the Ninth Circuit implicitly approved the class definition that included the phrase "as a result of" ("all Wells Fargo customers * * * who incurred overdraft fees on debit-card transactions as a result of the bank's practice of sequencing transactions from highest to lowest"). *Id.* Further, in *Larsen, supra,* the plaintiffs' proposed class consisted of all bank customers who incurred an overdraft fee "as a result of" the bank's practice of sequencing debit card transactions from high to low. The district court in *Larsen* held that the class definition was clear. *Id.* at 673.

{¶36} By certifying the class as defined, we hold the trial court abused its discretion. However, the Supreme Court of Ohio has stated that if the appellate court finds an abuse of discretion by the trial court in its definition of the class, the appellate court should not proceed to formulate the class itself. Rather, the court should remand the matter to the trial court. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, ¶12. This is because "the trial judge who conducts the class action and manages the case must be allowed to craft the definition with the parties." *Id.* Thus, rather than attempt to redefine the class ourselves, we remand the case to the trial court to do so.

{¶37} Next, FM argues the trial court failed to make a rigorous analysis regarding the predominance requirement under Civ.R. 23(B)(3), and abused its discretion in finding that common legal or factual issues predominated over individual issues.

{¶38} Pursuant to Civ.R. 23(B)(3), a class action is appropriate if:

{¶39} the questions of law or fact common to the members of the class predominate over any questions affecting only individual members,

11

and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

**{¶40}** The purpose of Civ.R. 23(B)(3) was to bring within the fold of class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy. *Warner, supra*, at 96. Thus, "this portion of the rule also was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." 7A Wright, Miller & Kane, Federal Practice and Procedure, *supra*, at 518, Section 1777.

**{¶41}** Before granting class certification under Civ.R. 23(B)(3), the court must first find that the questions of law or fact common to members of the class predominate over individual questions. For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be capable of resolution for all

members in a single adjudication. *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984).

{¶42} Here, the trial court found that common issues constitute a significant aspect of this case because, if it is determined that FM's practice of reordering debits from high to low is unlawful, the case would be resolved for all members of the class in one adjudication. Further, the court found that, once FM provides class-wide data, appellees would be able to perform an analysis of damages for the entire class.

{¶43} FM argues the trial court's analysis was deficient because the court was required, but failed, to determine in its judgment entry whether common issues predominated over the individual issues raised by FM *with respect to each of appellees' claims.* However, in addition to the judgment entry, the record shows the trial court conducted a lengthy oral hearing on appellees' motion for certification at which FM identified the individual issues and argued that they predominated as to each of appellees' claims. While the court did not expressly discuss in its findings the individual issues with respect to each of appellees' claims, it was not required to do so. *Hamilton, supra*, at 70. However, the court carefully considered FM's arguments; listed the individual issues asserted by FM in its judgment entry; and concluded that the common issues predominated over the individual issues identified by FM. The trial court thus satisfied its obligation to make a rigorous analysis of the predominance requirement.

{¶44} Specifically, with respect to appellees' claim for fraud, they alleged that FM misrepresented to them and to the putative class members in their monthly account statements that their transactions had occurred chronologically and that certain overdraft fees were owed when, in fact, they did not represent actual overdrafts. In

contrast, FM argues the trial court failed to recognize that proving fraud will require individualized evidence concerning, e.g., each class member's understanding of the account statements, reliance, and damages.

{¶45} The Supreme Court of Ohio addressed this argument in *Hamilton, supra*. There, the plaintiffs brought an action to challenge certain methods used to amortize their residential mortgage loans. The bank argued the elements of inducement and reliance must be proven on an individual basis. The trial court accepted the bank's argument and denied class certification. The Supreme Court reversed the trial court's decision, and allowed the action to proceed on the plaintiffs' fraud claim.

{¶46} In support of its holding, the Court in *Hamilton* stated that cases which involve common questions of law and fact arising from identical or similar form contracts and the use of standardized procedures present the classic case for treatment as a class action, and cases involving similar claims or similar circumstances are routinely certified as such. *Id*. at 80.

{¶47} The Court in *Hamilton* stated that claims containing a necessary element of reliance are not per se excluded from class action treatment because, if the drafters of Civ.R. 23 wanted to exclude them, they could have easily done so. *Id*. at 83. In rejecting the bank's argument, the Court stated, "'a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action. * * * On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representation made or in the kinds or degrees of reliance by the persons to whom they

14

were addressed.'" (Emphasis omitted.) *Id.* at 83-84, quoting the 1966 Advisory Committee Notes to Fed.R.Civ.P. 23(b)(3).

**{¶48}** Further, the Court in *Hamilton* stated that "class action treatment is appropriate where the claims arise from standardized forms or routinized procedures, notwithstanding the need to prove reliance." *Id.* at 84. The Court stated that in such cases, "proof of reliance will not require separate examination of each prospective class member. Instead, proof of reliance in this case may be sufficiently established by inference or presumption." *Id.*

**{¶49}** Moreover, the Supreme Court of Ohio in *Cope v. Metropolitan Life Ins. Co.*, 82 Ohio St.3d 426 (1998), stated that predominance is "'a test readily met in certain cases alleging consumer * * * fraud * * *.'" *Id.* at 429, quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The Court in *Cope* stated that a claim meets the predominance requirement when there exists generalized evidence that proves or disproves an element on a simultaneous class-wide basis. *Id.* at 429-430.

**{¶50}** Further, the Court in *Cope* stated that "[c]ourts generally find that the existence of common misrepresentations obviates the need to elicit individual testimony as to each element of a fraud * * * claim, especially where *written* misrepresentations or omissions are involved. They recognize that when a common fraud is perpetrated on a class of persons, those persons should be able to pursue an avenue of proof that does not focus on questions affecting only individual members. If a fraud was accomplished *on a common basis*, there is no valid reason why those affected should be foreclosed from proving it on that basis." (Emphasis added.) *Id.* at 430.

{¶51} Moreover, the Court in *Cope* noted that courts considering the reliance issue often decide the certification question based on whether the alleged misrepresentations were *varied or oral*, as opposed to *uniform or written*. *Id.* at 434-435. The court stated that the plaintiffs' claims presented "the classic case for treatment as a class action because they [were] based on written documents that uniformly indicate[d] the omission of standard disclosure warnings." *Id.* at 435.

{¶52} Thus, if appellees can establish by common proof and/or form documents that FM misrepresented that it posted appellees' debit transactions chronologically, rather than in high-to-low order, then an inference of inducement and reliance would arise as to the entire class, thereby obviating the need for individual proof on these issues. *Hamilton, supra*; *Cope, supra,* at 436.

{¶53} FM argues that appellees' fraud claim lacks any common misrepresentation because each class member would have his or her own transactions listed in his or her account statement. However, the fact that each class member has his own transactions does not detract from the standardized information in each class member's statement. The way in which the account information is posted is the basis for the claim and it is the same for all class members.

{¶54} Further, FM argues the common issues in this case do not predominate because the amount of each class member's damages will require individual evidence. However, the Supreme Court in *Hamilton* held that a trial court should not deny class certification solely on the basis of disparate damages. *Id.* at 81. The court stated that, while some courts have denied certification where the calculation of damages is very complex or burdensome, certification should not be denied where damages can be

16

calculated by a mathematical formula or statistical analysis. *Id.* at 81-82. Here, appellees' expert Mr. Curtin stated in his report that a computerized method of analyzing FM's data can be used to determine the amount of harm suffered by each class member. Thus, the disparate amount of damages sustained by each class member is insufficient to defeat class certification.

{¶55} Here, the alleged misrepresentations and omissions are contained in FM's account statements. Thus, appellees' fraud claim is based on standardized documents that were given to all customers, not their own understanding of these documents, their differing levels of knowledge, any oral misstatements, or their individual reliance. This documentary evidence supports a finding that common issues predominate as to appellees' fraud claim. The same is also true as to appellees' claim for unjust enrichment as that claim is also based on FM's alleged fraud.

{¶56} With respect to appellees' breach-of-contract claim, they alleged that their account agreement with FM only provided for overdraft fees if appellees actually overdrew their account. Appellees alleged that FM breached their account agreement by charging overdraft fees, although appellees had not actually overdrawn their account. Further, appellees alleged that FM breached their account agreement of adhesion by unilaterally amending their agreement to adopt the high-to-low posting order. In contrast, FM argues that common issues do not predominate with respect to appellees' breach-of-contract claim because such claim would require an inquiry into each class member's understanding of the terms of his or her account agreement, account statements, etc.

{¶57} In *Hamilton, supra*, the Supreme Court held that in a class action alleging breach of contract, individual inquiries into knowledge were unnecessary. *Id.* at 82. The Court stated:

{¶58} "We have a uniform class of borrowers who were submitted an identical (insofar as material here) adhesion contract under strictly regimented procedures. The only unknown factor is the knowledge of each borrower concerning the use of the deposits by defendant for its own purposes. It is our conclusion that the proof here indicates that it is 'unlikely' that 'numerous' members of the class possessed such knowledge or that the subject of the beneficial interest in the funds even occurred to them. It is therefore proper that this proceeding continue as a class action. In answer to the possible argument that no claims arising out of separate contractual situations are proper for class action treatment, we acknowledge that there is no doubt they present special problems. However, had it been the intention of the legislature to exclude contractual situations from class action relief, we believe it would have said so." *Hamilton, supra*, at 82-83, quoting *Derenco, Inc. v. Benjamin Franklin Fed. S. & L. Loan Assn.*, 281 Ore. 533, 572-573 (1978).

{¶59} Here, appellees' contract claim is based on FM's contract, rather than appellees' knowledge. This evidence supports a finding that common issues predominate as to appellees' contract claim. The same is also true as to appellees'

18

claims for breach of the covenant of good faith and fair dealing and unconscionability since both claims are included in appellees' claim for breach of contract.

**{¶60}** Next, FM argues a class action is not the superior method of adjudication based on its argument that common issues do not predominate. However, FM's argument fails in light of the trial court's finding that common issues predominate. Moreover, in support of the trial court's finding that a class action is the superior method of adjudication, the court addressed the pertinent superiority factors in Civ.R. 23(B)(3). Specifically, the court noted that no parallel, individual actions are pending, which weighs in favor of certification. Further, the court noted that the potential for recovery for each action brought individually would be limited, i.e., under $500 for each named plaintiff, and expensive, while a class action would permit class members to economically assert their rights. The purpose of Civ.R. 23(B)(3) was to allow class-action treatment for such claims. *Warner, supra*, at 96. Further, the trial court found the class is numerically substantial, i.e., over 40 members, but not so large as to be unwieldy, another factor in the superiority analysis.

**{¶61}** Thus, the trial court's finding that a class action was the superior method of adjudication was supported by the court's judgment and the record.

**{¶62}** Next, the bank argues the trial court abused its discretion in finding the typicality and adequate-representation requirements were satisfied. "The requirement for typicality is met where there is no express conflict between the class representatives and the class." *Hamilton, supra*, at 77. Similarly, a representative is deemed adequate so long as "his or her interest is not antagonistic to that of other class members." *Id.* at 77-78.

19

{¶63} FM argues that appellees' interests are antagonistic to those of the putative class members because appellees were already class members when FM adopted high-to-low posting, while the other class members opened their accounts after the change was adopted. The trial court found that appellees' position was comparable to that of other class members and thus there is no express conflict between appellees and the putative class members because appellees alleged in the complaint that all class members were inappropriately charged overdraft fees as a result of an improper reordering scheme adopted by FM.

{¶64} The Supreme Court of Ohio considered a similar argument in *Hamilton, supra.* There the bank argued a conflict existed between borrowers with understated monthly payments and those with properly stated monthly payments. The Supreme Court rejected this argument and held that, because each class member sought to establish that the method of computation and the exaction of additional charges produced an interest rate in excess of the rate set forth in their notes, there was no conflict or antagonism between the plaintiffs and the other class members. *Id.* at 78.

{¶65} With respect to adequacy of representation, FM argued below that, because not all customers would prefer the type of ordering the plaintiffs desire, the plaintiffs are antagonistic to the other class members. However, the trial court found that because plaintiffs' claim is that they and all other class members were charged excessive overdraft fees due to the way FM reordered debits, there was no conflict or antagonism between the plaintiffs and other class members, even if FM could prove that some customers preferred a different ordering system. The Supreme Court in *Hamilton* stated that a unique argument will not destroy typicality or adequacy of representation

20

unless it is so central to the litigation that it threatens to preoccupy the class representative to the detriment of the putative class members. *Id.* at 78. Moreover, the bank has failed to show that any class members would prefer a different method of reordering, let alone that such preference is so central to the action that it threatens to preoccupy appellees to the detriment of the putative class members.

**{¶66}** The trial court's finding that the typicality and adequacy-of-representation requirements were met was supported by the court's judgment entry and the record.

**{¶67}** Based on our review of the judgment and the record, the trial court conducted a rigorous analysis of the class action requirements. With the exception of the requirement that the class definition be unambiguous, the trial court did not abuse its discretion in deciding that each requirement was met and in certifying the class.

**{¶68}** The bank's first assignment of error is overruled. The second assigned error is sustained in part.

**{¶69}** For its third and final assigned error, the bank alleges:

**{¶70}** "The 'as a result of' class definition cannot be certified."

**{¶71}** FM argues that the alternative class definition in the amended complaint, which included the phrase "as a result of," is also insufficient to define the class because it is a "fail-safe class," i.e., one whose members cannot be known until after liability is found on the merits. This argument is based on FM's contention that appellees were required, but failed, to identify the proper posting order at the class-certification stage. However, since the trial court did not adopt this alternative definition, the argument is moot. In any event, this argument lacks merit because it is for the jury to choose the appropriate posting method following trial on the merits. *Larsen, supra.*

{¶72} The bank's third assignment of error is overruled.

{¶73} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed in part and reversed in part; and this case is remanded for further proceedings consistent with the opinion.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.