[Cite as *Unifund CCR Partners v. Piaser*, 2018-Ohio-2575.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**


| | | |
|---|---|---|
| UNIFUND CCR PARTNERS, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| DAVID ROSENBERG, et al., | : | **CASE NO. 2017-A-0003** |
| Counterclaim Defendants-Appellants, | : | |
| | : | |
| - vs - | : | |
| | : | |
| LISA R. PIASER, | : | |
| Defendant-Appellee. | : | |
| | : | |


Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2010 CV 80.

Judgment: Affirmed in part, reversed in part, and remanded.


*Alan H. Abes* and *Elizabeth M. Shaffer,* Dinsmore & Shohl, LLP, 255 East Fifth Street, Suite 1900, Cincinnati, OH 45202 (For Plaintiff-Appellant and Counterclaim Defendants-Appellants).

*Robert S. Belovich,* 9100 South Hills Boulevard, Suite 320, Broadview Heights, OH 44147, and *Anand N. Misra,* The Misra Law Firm, L.L.C., 3659 Green Road, #100, Beachwood, OH 44122 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Unifund CCR Partners, et al. ("Unifund"), appeal the judgment of the Ashtabula County Court of Common Pleas granting in part appellee, Lisa R.

Piaser's, motion for class certification on her counterclaim for violations of the federal Fair Debt Collection Practices Act ("FDCPA").  At issue is whether the trial court abused its discretion in partially granting Ms. Piaser's motion. For the reasons that follow, the judgment is affirmed in part, reversed in part, and remanded.

{¶2}   On October 15, 2009, Unifund filed a complaint against Ms. Piaser in the Ashtabula County Municipal Court to collect an alleged credit card debt.   Unifund alleged that Providian National Bank was the original creditor and that the account had been assigned to it.  The account was open from April to June 2000. The complaint alleged that the charge-off balance in 2001 was $267 and that, with interest, the amount due is now $684.

{¶3}   In her first amended answer and counterclaim, Ms. Piaser denied the material allegations of the complaint, including that she owed any amount under the account.  She also asserted individual and class counterclaims for violations of the FDCPA, the Ohio Consumer Sales Practices Act ("CSPA"), and various common law claims.  Ms. Piaser alleged Unifund is a debt collector under the FDCPA and is in the business of acquiring and collecting defaulted consumer credit card debt.  She alleged Unifund violated the FDCPA, at 15 U.S.C. 1692e, by making false and misleading representations in lawsuits and demanding payment.  Ms. Piaser prayed for damages and injunctive relief.   Upon assertion of her counterclaims, the municipal court transferred the case  to the Common Pleas Court.

{¶4}   On September 1, 2010, Unifund filed a motion for summary judgment on Ms. Piaser's counterclaims. On June 28, 2013, the trial court granted the motion in

Unifund's favor on Ms. Piaser's common law claims, leaving only her counterclaims for violations of the FDCPA and the CSPA. In its entry, the court noted:

{¶5} [Unifund] contends that R.C. 1319.12 [regarding the collection of assigned debts] does not apply because it was not acting as a collection agency, but was pursuing collection of the debt against [Ms. Piaser] on its own behalf, as the purchaser of the obligation. If true, this could be correct as to [Ms. Piaser]. [Ms. Piaser] claims that [Unifund] cannot show that it received a valid assignment of her claimed credit card obligation to Providian National Bank. The Court finds that, on the state of the record, there remains an issue of fact as to this contention.

{¶6} On December 14, 2014, Ms. Piaser filed a motion seeking to certify her counterclaims as a class action and Unifund filed a brief in opposition. She also filed a motion for sanctions due to Unifund's alleged failure to comply with the court's September 4, 2014 discovery order requiring Unifund to produce documents related to the ownership of Ms. Piaser's account. Unifund filed a brief in opposition.

{¶7} In her motion for class certification, Ms. Piaser requested the court certify two classes, which she referred to as the "Incompetence Class" and the "Time-Bar Class." Since the court ultimately granted her motion to certify only as to the Incompetence Class, our analysis is confined to that class. Ms. Piaser has also filed an appeal of the trial court's denial of her motion to certify the Time-Bar Class. That appeal is also pending and will be addressed in a separate opinion.

{¶8} Ms. Piaser's proposed common class criteria for each member of the Incompetence Class (hereafter "the class") are that each member is (1) an individual; (2) against whom Unifund filed a lawsuit in Ohio; (3) to collect a debt related to a credit card; and (4) that the suit was filed on or after December 23, 2008 and thus with a one year look back period. Ms. Piaser also included the following additional class criteria:

3

"At the time of filing of the lawsuit, an entity other than [Unifund] held the right, in whole or part, to receive the money that was sought to be collected through the lawsuit.

{¶9} In her brief in support of her motion to certify, Ms. Piaser argued that Unifund does not own her account due to the lack of an assignment from the account's owner, Unifund Portfolio E, L.L.C. ("Portfolio E"), but, rather, was merely a debt collector. In support, she pointed out that in Unifund's answer to the counterclaim, it admitted it merely "manages the collection of distressed consumer receivables."

{¶10} Ms. Piaser further argued that the accounts of the purported class members are owned by several limited liability companies that are affiliated with Unifund, which it refers to as "Special Purpose Vehicles" ("SPVs"). Unifund's vice-president, Jeffrey Shaffer, testified in deposition that the "special purpose" of the SPVs is to purchase defaulted credit card accounts from creditors. Mr. Shaffer said that the SPVs purchase the accounts and Unifund is the "servicer" on these accounts.

{¶11} Further, Scott Walther, another Unifund vice-president, testified as to how defaulted accounts are purchased. He said Unifund acquires portfolios of defaulted credit card accounts with funds invested by one or more of the SPVs. He said that when the SPV(s) contribute funds for the purchase of a portfolio of defaulted accounts from a creditor, this is considered an investment. When Unifund purchases a portfolio of defaulted accounts, the accounts in the purchased portfolio are transferred to the balance sheets of the investing SPVs by a process that Unifund refers to as "marking."

{¶12} Mr. Walther said that when a payment comes in on an account, either in collection proceedings or in a later sale of the account, the proceeds are placed into a

4

trust account. The funds are then split between Unifund and the SPV (as a return on its investment) and the SPV pays a collection fee to Unifund.

{¶13} In this case, the SPV that invested the funds to purchase Ms. Piaser's account was Portfolio E. After the acquisition of this account, Unifund transferred or "marked" it to Portfolio E, and thereafter any funds collected on Ms. Piaser's account would have been given to Portfolio E.

{¶14} Ms. Piaser argued that Unifund's act of "marking" or transferring the accounts it purchased to the SPVs (whose funds were used to purchase them) resulted in a transfer of ownership of the account to the SPV. As a result, she argued that before Unifund could sue her, Unifund was required, but failed, to obtain an assignment of the account from Portfolio E that complied with R.C. 1319.12. She said Unifund failed to produce in discovery any assignment from Portfolio E of Ms. Piaser's account. She argued that because her account was never assigned to Unifund, its allegation in the complaint that it was entitled to sue on her account in its own name was a misrepresentation and, thus, a violation of the FDCPA.

{¶15} In a separate motion for sanctions, Ms. Piaser argued she has been unable to determine the exact interest Unifund transferred by way of "marking" her account to Portfolio E. She said this is due to Unifund's failure to comply with the court's prior discovery order requiring it to provide documents aimed at determining the interest Portfolio E received as a result of Unifund marking Ms. Piaser's account to it.

{¶16} Unifund filed a brief in opposition to Ms. Piaser's motion to certify, arguing that it, i.e., Unifund, owns and holds title to Ms. Piaser's account and that, as a result, Unifund was not required to obtain an assignment in order to sue her on the account. In

support, Unifund attached a bill of sale showing it purchased Ms. Piaser's account from Providian; however, the bill of sale from Providian to Unifund sheds no light on what interest, if any, was acquired by Portfolio E in the account as a result of Unifund's later transfer or marking the account to Portfolio E in exchange for Unifund's use of its funds to purchase the account. Unifund argued that marking an account has nothing to do with who holds title to the account. Instead, marking simply designates which SPV will receive a portion of collected funds from the account as a return on the funds the SPV invested to purchase the portfolio containing the account.

{¶17} On December 6, 2016, the trial court entered judgment partially granting Ms. Piaser's motion for class certification. However, the court found Ms. Piaser's definition of the class to be overbroad and modified it to read as follows (with the court's additional language in bold): "At the time of filing of the lawsuit, an entity other than [Unifund] held the right, in whole or part, to receive the money that was sought to be collected through the lawsuit, **and [Unifund] did not meet the FDCPA requirements to lawfully file suit to collect the debt in its own name."** (Emphasis in original.)

{¶18} The court also granted in part Ms. Piaser's motion for sanctions. Unifund argued that, because it did not consider Portfolio E as the owner of Ms. Piaser's account, in its view, it was not required to produce the documents listed in the court's discovery order. The court rejected Unifund's interpretation of the court's order, and found that the issue of Portfolio E's ownership interest in Ms. Piaser's account was the "crux" of this case and again ordered Unifund to turn over the requested documents within 45 days. These included (1) the servicing agreement Unifund entered into with Portfolio E, (2) the *accounting documents demonstrating Portfolio E's interest in Ms.*

6

*Piaser's account*, and the (3) *transfer documents showing the rights of the parties during the initial investment and during the "marking" process.* After both parties appealed in part the court's class-certification judgment, the trial court entered a stay of proceedings pending further order and the record does not show whether Unifund has complied with the court's discovery order.

{¶19} Unifund appeals the trial court's judgment, asserting the following for its sole assignment of error:

{¶20} "The trial court abused its discretion by granting Ms. Piaser's motion to certify an incompetence class."

{¶21} As a preliminary matter, the trial court's judgment was a final order because it was an order that determined whether the action may be maintained as a class action. R.C. 2505.02(B)(5).

{¶22} On appeal, the parties essentially repeat the arguments they made below. Ms. Piaser argues that, as a result of Unifund's practice of marking, the SPVs that invested in the purchase of the defaulted accounts have a right to the collection proceeds, with Unifund receiving a collection service fee. She argues the relationship between Unifund and the SPVs makes the SPVs the owners of the accounts and Unifund a debt collector subject to the FDCPA. She argues Unifund's practice of filing suit in its own name without obtaining an assignment from the SPVs in compliance with R.C. 1319.12 when one or more of the SPVs own the accounts violates the FDCPA by using false or misleading representations in the complaint.

{¶23} In opposition, Unifund argues that it is the owner of the account and, thus, was not required to have an assignment in order to sue on the account. Unifund argues

7

that, although Ms. Piaser's account was marked to Portfolio E, that did not make this SPV the owner of the account because, in Unifund's view, marking is not the same as transferring title to the account. Unifund argues that marking the account simply designates which SPV will receive the revenue from the account as a return on the funds the SPV invested to purchase the account.

{¶24} The Supreme Court of Ohio has held that "[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus. Thus, appellate courts generally give trial courts broad discretion in deciding whether to certify a class. *Hamilton v. Ohio Savings Bank*, 82 Ohio St.3d 67, 70 (1998). The Ohio Supreme Court has stated that "the appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded * * * in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Id.*, citing *Marks, supra*, at 201.

{¶25} However, "the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." *Hamilton, supra*. Where the trial court's written decision granting class certification provides an articulated rationale sufficient to support an appellate inquiry into whether the relevant factors were properly applied and given

8

appropriate weight, the trial court does not abuse its discretion in conducting its rigorous analysis. *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 483 (2000).

**{¶26}** In reviewing a motion for class certification, the court must take the substantive allegations of the claim as stated in the complaint (or counterclaim) as true and not reach the merits of those allegations and claims. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 233 (1984). "Class action certification does not go to the merits of the action." *Id.* However, the trial court may probe the merits for the limited purpose of determining that the plaintiff has satisfied Civ.R. 23. *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, ¶26. "[A]ny doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties." *Baughman, supra*, at 487.

**{¶27}** "The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met. *Jacobs v. FirstMerit Corp.*, 11th Dist. Lake No. 2013-L-012, 2013-Ohio-4308, ¶24, citing Civ.R. 23(A) and (B); *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91 (1988).

9

**{¶28}** The Ohio Supreme Court, in *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, ¶7, stated:

> **{¶29}** "Congress passed the FDCPA to address 'what it considered to be a widespread problem' of consumer abuse at the hands of debt collectors." *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 712-713 (6th Cir.2015), quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992). The intent of the FDCPA is to "eliminate abusive debt collection practices" that have contributed to personal bankruptcies, job loss, and invasions of individual privacy. 15 U.S.C. 1692(a) and (e); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577 (2010). "In reaction to the size of the problem, [Congress] crafted 'an extraordinarily broad' remedial statute." *Wise* at 713, quoting *Frey* at 1521. *The FDCPA prohibits debt collectors from employing "any false, deceptive, or misleading representation * * * in connection with the collection of any debt*[.]*"* 15 U.S.C. 1692e(2)(A). (Emphasis added.)

**{¶30}** Ms. Piaser alleges Unifund is a "debt collector" whose litigation activity is subject to the FDCPA. Her counterclaim alleged Unifund violated Sec. 1692e of the FDCPA (which prohibits a debt collector from using any false or misleading representation in the collection of a debt) by alleging in its complaint it was the owner of the account without obtaining an assignment from Portfolio E that complied with R.C. 1319.12. That section provides, in pertinent part:

> **{¶31}** (A)(1) "[C]ollection agency" means any person who, for compensation, * * * offers services to collect an alleged debt asserted to be owed to another.

> **{¶32}** (B) A collection agency * * * may take assignment of another person's accounts * * * in its own name for the purpose of * * * collecting * * * or filing suit in its own name as the real party in interest.

> **{¶33}** (C) No collection agency shall commence litigation for the collection of an assigned account unless it has taken the assignment in accordance with all of the following [pertinent] requirements:

10

**{¶34}** (1) The assignment was * * * properly executed * * *and acknowledged by the person transferring title to the collection agency.

**{¶35}** * * *

**{¶36}** (3) The assignment was manifested by a written agreement * * *. The written agreement shall state the effective date of the assignment and the consideration paid or given, if any, for the assignment * * *.

**{¶37}** In support of her FDCPA claim, Ms. Piaser cites *Wallace v. Washington Mut. Bank*, 683 F.3d 323, 327 (6th Cir.2012). In that case, the mortgage debtor brought an action alleging that the bank's law firm violated the FDCPA and state law by filing a foreclosure action on behalf of the bank because the bank did not own her mortgage or promissory note. The district court dismissed the complaint, but, on appeal, the Sixth District reversed. The court held the mortgage debtor's allegation that the law firm filed the foreclosure action claiming ownership of the mortgage by the bank before it received the transfer-of-ownership documents was sufficient to state a claim for material misrepresentation under the FDCPA (15 U.S.C. 1692e), even if state law permitted the client to anticipate that it would become the title-holder after the foreclosure action was initiated, but before it became final. The Sixth Circuit stated:

**{¶38}** District courts have decided, and we agree, that a clearly false representation of the creditor's name may constitute a "false representation * * * to collect or attempt to collect any debt" under Section 1692e. *Hepsen v. J.C. Christensen and Assocs., Inc.*, No. 8:07-CV-1935-T-EAJ, 2009 WL 3064865, *5 (M.D.Fla. Sept. 22, 2009) (imposing liability based on a statement incorrectly identifying the name of a creditor comports with the purposes of the Act) * * *. *Wallace, supra*

**{¶39}** Further, this court has stated: "A collection agency may file suit in its own name only when it has become the legal and equitable owner of the debt through an

11

assignment that satisfies all of the requirements set forth in R.C. 1319.22" *Capital One Bank (USA), NA v. Reese*, 11th Dist. Portage No. 2014-P-0034, 2015-Ohio-4023, ¶89.

{¶40} **IDENTIFIABLE CLASS AND UNAMBIGUOUS CLASS DEFINITION**

{¶41} "'The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Hamilton, supra*, at 71-72, quoting 7A Wright, Miller & Kane, Federal Practice and Procedure 120-121, Section 1760 (2d Ed.1986). Thus, the class definition must be precise enough "'to permit identification within a reasonable effort.'" *Hamilton, supra*, quoting *Warner, supra*, at 96. "An identifiable class must exist before certification is permissible. The definition of the class must be unambiguous." *Warner*, paragraph two of the syllabus. Where a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite. *Miller v. Painters Supply & Equip. Co.*, 8th Dist. Cuyahoga No. 95614, 2011-Ohio-3976, ¶24.

{¶42} In its judgment, the trial court found that Ms. Piaser's class definition was overbroad because it would include consumers who have no claim since, under the FDCPA, there is no blanket prohibition against a plaintiff in a collection lawsuit filing suit in its own name to collect a debt owed to another entity. The court found the proposed class definition would include individuals who were not harmed by any unlawful conduct. In an attempt to limit the class members to those for whom Unifund lacked standing to sue, the court modified the class definition. That definition, with the court's modification in bold, states:

{¶43} At the time of filing of the lawsuit, an entity other than [Unifund] held the right, in whole or part, to receive the money that was

12

sought to be collected through the lawsuit, **and [Unifund] did not meet the FDCPA requirements to lawfully file suit to collect the debt in its own name.** (Emphasis sic.)

**{¶44}** Unifund argues the trial court abused its discretion in certifying the class because the class definition, as modified by the trial court, is an impermissible "fail safe" class. In support, *Unifund relies on Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 236, 2013-Ohio-3019, ¶8, n.2, in which the Ohio Supreme Court (quoting *Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 288 (D.S.C.2012), stated:

**{¶45}** "A fail safe class definition is one in which the putative class is defined by reference to the merits of the claim. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 (7th Cir.2012) * * *. It requires a court to rule on the merits of the claim at the class certification stage in order to tell who was included in the class. *Id.* "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 826.

**{¶46}** Unifund argues the class definition here defines a fail safe class because it includes the criterion that Unifund *did not meet the FDCPA requirements to lawfully file suit* in its own name. Unifund argues the class is improperly defined by reference to the merits of the claim because, for each class member, the court would have to find whether Unifund met the FDCPA requirements to tell who was included in the class.

**{¶47}** Other examples of fail safe class definitions include language such as activities "which violate the FDCPA," and the collection complaints "falsely stated that the plaintiff had taken assignment of the claims." *Cox v. Sherman Capital, LLC*, No. 1:12-cv-01654, 2016 WL 274877, *4 (S.D.Ind.2016); *Eager v. Credit Bureau Collection Servs., Inc.*, Nos. 1:13-CV-30, etc., 2014 WL 3534949, *2 (W.D.Mich.2014).

13

**{¶48}** We agree that the class definition, as amended by the trial court, defines a fail safe class because it requires a court to rule on the merits of the claim at the class certification stage in order to tell who is included in the class. Thus, the language in the modified class definition should be deleted.

**{¶49}** *However, the main issues in this case are common to the members of the class.* Marking occurs for every class member's account that was purchased by Unifund and the rights and obligations, if any, transferred during marking are the same for all class member accounts. Further, Unifund concedes that the marking process gives each SPV the right to at least part of the collection proceeds derived from each class member's account. For this reason, the determination of this issue can potentially be made on a class-wide basis without the need for individualized inquiries if the class definition can be crafted without use of fail safe language.

**{¶50}** This court stated that "'*Warner*[*, supra*, at] 98, not only permits but encourages the trial court to modify what is otherwise an unidentifiable class.'" *Jacobs, supra*, at ¶29, quoting *Ritt v. Billy Blanks Enters.*, 8th Dist. Cuyahoga No. 80983, 2003-Ohio-3645, ¶20. Specifically, courts have discretion to redefine a class to avoid the fail safe problem by, for example, making the class definition neutral by describing the defendant's conduct without interjecting an assumption of liability. *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 69-70 (E.D.N.Y.2014) (court replaced offending language that defendant charged an "excessive fee" in violation of the subject contract with neutral language that he charged a particular fee).

**{¶51}** The Ohio Supreme Court has stated that if the *appellate court* finds an abuse of discretion by the trial court in its definition of the class, the appellate court

14

should not proceed to formulate the class itself. Rather, the court should remand the matter to the trial court. *Stammco, supra*, at ¶12. This is because "the trial judge who conducts the class action and manages the case must be allowed to craft the definition with the parties." *Id*. Thus, rather than attempt to redefine (or narrow) the class ourselves, we remand the case to the trial court to do so.

{¶52} On remand, the court should remove the fail safe language and, if possible, modify or narrow the remaining provisions of the definition in such a way that the putative class is not defined by reference to the merits of the claim. In this endeavor, the court should consider referencing Unifund's practice of marking, but removing the language that presupposes Unifund is liable for an FDCPA violation.

{¶53} **WHETHER LISA PIASER IS A MEMBER OF THE CLASS**

{¶54} Unifund argues that Ms. Piaser is not a member of the class because, unlike the case with other class members, Unifund has title to her account and was thus entitled to sue her without an assignment. However, contrary to Unifund's argument, the fact that it has a bill of sale for Ms. Piaser's account does not address the central issue here, which is the legal effect of Unifund's marking the account to Portfolio E *after* Unifund bought it from Providian. Unifund faults the trial court for not making a "rigorous analysis" concerning whether Portfolio E or Unifund owns Ms. Piaser's account. However, *Unifund cannot fairly make this argument because it failed to comply with the trial court's discovery order to produce documents pertinent to this issue*. While Unifund's principals provided testimony supporting Ms. Piaser's position, without Unifund's compliance with the court-ordered document production, the trial court was

unable to determine at the certification stage whether the marking process resulted in the transfer of ownership to Portfolio E.

{¶55} Unifund acknowledges the trial court found in its judgment that Ms. Piaser is a member of the class because her account was marked to an SPV like those of other class members and that whether that proves to be a FDCPA violation is an unresolved question for the trier of fact that survived summary judgment. However, Unifund argues Ms. Piaser was required to prove Unifund does not own the account in order to be a member of the class. Again, Unifund's argument is disingenuous because it hindered Ms. Piaser in making such showing by failing to comply with the court's order that it produce its documents that bear on this issue. After Unifund complies with the court's discovery order, the issue will be decided at trial.

{¶56} **NUMEROSITY**

{¶57} Unifund does not dispute the court's finding that the class identified by Ms. Piaser is so numerous that joinder of all members is impracticable. The court noted that Ms. Piaser presented evidence that more than 3,000 accounts would fall into the class.

{¶58} **COMMONALITY AND TYPICALITY**

{¶59} Unifund argues that Ms. Piaser's claims are not common to or typical of the class. Commonality requires "a common nucleus of operative facts." *Warner, supra,* at 97. "The requirement for typicality is met where there is no express conflict between the class representatives and the class." *Hamilton, supra*, at 77. The trial court identified the following common questions: (1) "the extent that marking the accounts and investment by the SPVs transfers ownership of the accounts to the SPVs," (2)

16

"whether the SPVs must be named as parties to the action," and (3) "whether [Unifund] is the real party in interest."

{¶60} As the trial court noted, Ms. Piaser asserts that she was sued by Unifund on a debt that was marked to at least one SPV, Portfolio E. As such, the court found that her claim appears to be the same as the claims held by other members of the class. The court also noted that the defenses raised by Unifund would be the same as it would raise against the claims held by the other class members. Ms. Piaser thus satisfied the commonality and typicality requirements.

{¶61} **ADEQUACY OF REPRESENTATION**

{¶62} A representative party is adequate if his or her interest is not antagonistic to that of other class members *Warner, supra*, at 98. No evidence in the record indicates any conflict between Ms. Piaser and the class.

{¶63} **THE CIV.R. 23(B) FACTORS**

{¶64} Having found all Civ.R. 23(A) factors were met, the trial court was also required to determine that at least one of the three Civ.R. 23(B) factors was met. The court found that two apply. Under Civ.R. 23(B)(2), the court must find that the class is seeking to prevent future injury or damages by enjoining the class action defendant from engaging further in the practices alleged in the suit as violating the law. Civ.R. 23(B)(2) applies to suits seeking injunctive relief. *Warner, supra*, at 95. The trial court found that in her counterclaim, Ms. Piaser "is seeking, in addition to money damages, that [Unifund] be ordered to develop and implement procedures in order to ensure they meet the requirement of standing to sue." Unifund argues that injunctive relief is not available because the class remedy would be primarily monetary rather than injunctive.

17

However, the Ohio Supreme Court has stated that disputes over whether the action is primarily for injunctive relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. *Hamilton, supra*, at 87. Thus, such disputes should be avoided, and if injunctive relief has been requested, the action should be allowed to proceed under Civ.R. 23(B)(2). *Hamilton* at 87. Since Ms. Piaser seeks injunctive relief in addition to a monetary award, the Civ.R. 23(B)(2) factor was satisfied. Several federal courts have allowed injunctive relief in private class actions alleging FDCPA violations. *See,* e.*g., Schwarm v. Craighead*, 233 F.R.D. 655, 663 (E.D.Cal.Mar. 7, 2006).

{¶65} Civ.R. 23(B)(3) applies where the plaintiff seeks damages and the trial court makes two findings: (1) that the questions of law or fact common to members of the class predominate over questions affecting only individual members and (2) that a class action is superior to other available methods for efficiently adjudicating the controversy.

{¶66} "For common questions of law or fact to predominate, * * * the common questions must represent a significant aspect of the case and they must be capable of resolution for all members in a single adjudication." *Jacobs, supra*, at ¶41. The trial court noted that Ms. Piaser has asserted Unifund uses standardized procedures to "mark" accounts to SPVs and then files lawsuits to collect on the accounts, which forms the basis of her allegations of FDCPA violations. The court found the proposed class apparently relies on these procedures and their alleged unlawfulness as a basis for their claims.

18

{¶67} The court also found that class certification, as opposed to individual litigation, is appropriate here since there is a small amount of damages at issue for all class members and they are unsophisticated consumers who would most likely be unaware of the legal issues raised by the class action.

{¶68} We thus hold the trial court did not abuse its discretion in finding that Ms. Piaser met the criteria under Civ.R. 23 and in granting her motion for class certification.

{¶69} For the reasons stated in this opinion, the assignment of error is overruled. It is the order and judgment of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded.

TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.